WILLIAM F. CHRISTISON, Trustee, Plaintiff-Appellant, *v.* EDWIN B. JONES, III, Defendant-Appellee.

Third District No. 79-849

Opinion filed April 29, 1980.

Matthew A. Maloney, of Pierson and Maloney, of Princeton, and Baymiller, Christison & Radley, of Peoria, for appellant.

Irving Faber, of Faber & Cunniff, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

William F. Christison, trustee of the bankruptcy estate of Norman Sluis, bankrupt, appeals from the dismissal of his suit against Edwin B. Jones III, which suit was based upon Jones' allegedly negligent representation of the bankrupt in litigation prior to the bankruptcy.

Christison took the position, in the circuit court, that as trustee in bankruptcy he was the owner of any cause of action for legal malpractice which the bankrupt might have against Jones. Based upon his assertion that the cause of action for legal malpractice was an asset of Sluis' estate under the Bankruptcy Act (11 U.S.C. §110 (1966)), trustee Christison filed the negligence action against Jones. The complaint sought damages, in the amount of $57,352.08, plus interest, for Jones' alleged breach of his duty to exercise a reasonable degree of care and skill in representing Sluis in connection with a prior suit, wherein judgment against Sluis had been entered.

The defendant Jones filed a motion to dismiss the malpractice complaint, and, alternatively, also a motion for summary judgment, which motions were based upon the argument that the malpractice cause of action, being a tort, is not assignable, alienable, leviable or transferable, and that, therefore, it does not pass to the trustee in bankruptcy under bankruptcy law. (11 U.S.C. §110(a)(5), (6) (1966).) At the hearing on the motion, the defense moved that the motion also be treated as a section 48 motion. (Ill. Rev. Stat. 1977, ch. 110, par. 48.) The circuit court granted the motion to dismiss, finding that the cause of action did not pass to the trustee in bankruptcy. The appeal followed.

The issue raised on this appeal is whether, under the bankruptcy act (the former bankruptcy act) and under the law of Illinois, the right to file an action for legal malpractice is an asset of the bankrupt's estate, such that the trustee in bankruptcy can pursue the action in court.

Section 70 of the Bankruptcy Act applicable in the instant case provides:

> "(a) The Trustee of the estate of a bankrupt * * * shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this act * * * to all of the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: *provided* that rights of action ex delicto for libel, slander, injuries to the person or the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration, or other judicial process * * *." 11 U.S.C. §110(a)(5) (1966).

The trustee argues that the underlying cause of action is one for injury to the bankrupt's personal estate, and not for injuries to his person. The trustee contends that the malpractice action is not covered by the proviso of subsection (5) for personal injury actions. The trustee then asserts that because an action for malpractice survives the death of an injured client and passes to his personal representative, therefore, it is assignable and, thereby, property of the trustee in bankruptcy under subsection (5). The defense argument to the court assumes that the cause of action is one for injury to the person, and then goes on to demonstrate that such tort actions are not subject to attachment, execution, garnishment or sequestration, except as they have gone to judgment. Neither, defendant asserts, are such personal injury actions assignable. Therefore, according to the defense, they do not pass to a trustee in bankruptcy under section 70(a)(5).

■■ The arguments presented by the parties, insofar as they focus principally on characterizing the action as either one to the person or as one to the property of the bankrupt, overlook the essential issue and fail to take account of public policy considerations involved. The cause of action based upon legal malpractice is, in its essence, a tort action for negligence premised upon breach of the attorney's duties to his client. While the malpractice action has personal aspects to it, because of the nature of the relationship between an attorney and his client (a topic we shall return to later), nevertheless it cannot be seriously concluded that it is an action for injuries to the person of the bankrupt, within the meaning of the proviso in subsection (5). Clearly, when the statute refers to injuries to the person, "whether or not resulting in death," it speaks of injuries to

the body or feelings of the bankrupt and not in any wider sense. Nor could the bare right to file a cause of action for legal malpractice, being an unliquidated-tort cause of action, be levied upon by execution or otherwise seized, impounded or sequestered. (See Ill. Rev. Stat. 1977, ch. 77, par. 4; Ill. Rev. Stat. 1977, ch. 22, par. 49; Ill. Rev. Stat. 1977, ch. 110, par. 73(2)(a); Ill. Rev. Stat. 1977, ch. 11, pars. 1, 8; Ill. Rev. Stat. 1975, ch. 22, par. 42.) This results from the circumstance that prior to judgment, in such an action, there is no property of the person to be reached, as any potential judgment is both contingent and speculative, and dependent on the client's determination whether or not to sue the attorney. The real issue here has to do with whether the cause of action, based upon legal malpractice, is one which the bankrupt could have transferred, prior to the filing of the petition initiating bankruptcy proceedings. The essential and important question, then, is whether a cause of action for legal malpractice is assignable.

■ An adequate response to this question necessitates an examination of the nature of the cause of action for legal malpractice and an examination of public policy considerations bearing upon the issue of assignability of such an action. Because of the somewhat unique nature of the attorney-client relationship, the general rules concerning assignability which have long been established, while helpful in some respects, are not dispositive. In *North Chicago Street R.R. Co. v. Ackley* (1897), 171 Ill. 100, 49 N.E. 222, the Supreme Court of Illinois discussed the general rules of survivability and assignability. The *Ackley* court noted that while survivability of an action is the usual test to determine assignability, it is not the sole test. The court therein concluded that while a personal injury action survived, by virtue of the survival statute, it was nevertheless not assignable, on public policy grounds. (171 Ill. 100, 109-11.) (See *Wilcox v. Bierd* (1928), 330 Ill. 571, 585, 162 N.E.2d 170.) In *Ackley* the court analyzed a number of cases on the subject and relied upon the leading commentator in the area, Pomeroy, in his treatise on equity jurisprudence, in drawing a distinction between contract actions and torts to property, which are generally assignable, and torts to the person and specified contract actions, which are not assignable. Included in the latter class were actions upon contracts of a personal nature, such as breach of a promise to marry, and, in some cases, a personal service contract. (171 Ill. 100, 108-09.) In addition to setting forth broad general rules, the *Ackley* court established the method for determining the assignability of a cause of action. The decision there was based upon the court's analysis of the nature of the claim sought to be assigned and upon an examination of the public policy considerations implicated, if the assignment of such claims was permitted. 171 Ill. 100, 111-12.

This approach and analysis is what is called for in the instant case.

The cause of action for legal malpractice has aspects to it which fit into both classes outlined in *Ackley*. It is primarily a tort action for negligence based upon an attorney's failure to exercise a reasonable degree of skill and care in representing his client. (*Smiley v. Manchester Insurance & Indemnity Co.* (1978), 71 Ill.2d 306, 375 N.E.2d 118.) Yet, the duty allegedly breached in such an action arose out of the establishment of the attorney-client relationship by a contract for legal services. As we noted previously, the injuries resulting from legal malpractice are not personal injuries, in the strict sense of injuries to the body, feelings or character of the client. Rather, they are pecuniary injuries to intangible property interests. While focus on these aspects of the malpractice cause of action might indicate placement of it under the class of tort actions for injury to personal property, such placement overlooks the personal nature of the relationship, with attendant duties, that exists between an attorney and client. It is a breach of those duties within the relationship which forms the real basis and substance of the malpractice suit.

It has long been established that the relationship between an attorney and client is a fiduciary one, and that within that relation the attorney owes his client the utmost degree of fidelity, honesty and good faith. (*Schmidt v. Landfield* (1959), 23 Ill. App. 2d 55, 59-60, 161 N.E.2d 702.) The relationship is a confidential one to be highly honored and guarded by the attorney. (*Rose v. Frailey* (1957), 10 Ill.2d 514, 517, 140 N.E.2d 711.) In recognition of the personal character of the relationship, it has always been jealously guarded and restricted to the parties involved. As was noted by the Illinois Supreme Court in *Cornelius v. Wash* (1825), 1 Ill. 98, 100:

> "The confidence reposed in counsel is of a personal nature, and can not be delegated without the consent of the client."

Again, in *Morgan v. Roberts* (1865), 38 Ill. 65, 85, the court noted that the attorney's duty to his client "is a personal duty and trust which cannot be delegated or performed by another." Given these aspects of the relation, it can be seen that the real substance of a malpractice action is a client's claim that his attorney has breached his personal duty and trust to that client by failing to exercise the requisite degree of care and skill or by failing to give the utmost loyalty and fidelity to the client's interests.

With its unique aspects, the tort of legal malpractice does not fit well into categories previously established for determining assignability. It has aspects of the tort to property, inasmuch as the injuries resulting are to property interests, and it has highly personal aspects without being a personal injury tort. We find that the personal nature of the relationship and the duty imposed upon the attorney, coupled with public policy considerations surrounding that relationship and any potential

assignability of breaches thereof (giving rise to causes of action in legal malpractice) lead us to conclude that the legal malpractice claim is not subject to assignment. We are in accord with the public policy considerations as well articulated by the California Court of Appeals in *Goodley v. Wank & Wank, Inc.* (1976), 62 Cal.App.3d 389, 397, 133 Cal.Rptr. 83, 87, where the court says:

> "The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandising such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defense themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client."

It is worth noting, in passing, that in the instant case, the bankrupt Norman Sluis found no fault with his attorney's representation of him in the prior suit. In an affidavit which was before the circuit court on the motion to dismiss, and which is before us by virtue of our herein having granted the defendant's motion to supplement the record, the bankrupt Norman Sluis states his satisfaction with the job done by attorney Jones. He also indicated his desire not to pursue legal action against Jones and not to transfer any right of action he might have against Jones. Given the policy considerations discussed and the personal nature of the duty owed by an attorney to his client, the decision as to whether a malpractice action should be instituted should be a decision peculiarly for the client to make. To allow that decision to be made by an assignee or by a trustee in bankruptcy, without any regard to the client's wishes or intentions (or completely contrary to the client's wishes) would be to encourage the untoward consequences set forth in the *Goodley* California appellate case

referred to. We conclude that a cause of action for legal malpractice is not assignable and, therefore, is not part of the estate of the bankrupt under section 70(a) of the bankruptcy act. 11 U.S.C. §110(a) (1966).

We are aware of the First District's decision in *McGill v. Lazzaro* (1978), 62 Ill. App. 3d 151, 379 N.E.2d 16, in which, at the end of the opinion, the court briefly concludes that legal malpractice actions are assignable. We would note that the main issue in *McGill* was the survival of the malpractice action against the estate of the deceased attorney. The principal basis for finding that the action survived was the court's construction of the survival statute. We also note that authority relied upon for concluding that the legal malpractice action was assignable was *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 338 N.E.2d 912. The *Browning* case dealt with a cause of action for negligence against an insurer for its refusal to settle within policy limits. The court found that the negligence cause of action could be assigned to the insured's judgment creditor. (33 Ill. App. 3d 943, 947; see Annot., 12 A.L.R.3d 1158 (1967).) *Browning* did not address itself to, nor did it involve, a cause of action for legal malpractice in any respect, and the general rule of assignability for negligence actions was announced within an insurance context, specifically for negligence actions against an insurer. A different cause of action with entirely different policy considerations is involved where the negligence action is one against an attorney for malpractice. The *McGill* court's finding that malpractice actions are assignable was a secondary basis for its decision, and was only briefly touched upon. In addition, the authority relied upon for that finding is not persuasive as it did not discuss or analyze the issue in the instant case.

In absence of a controlling precedent on the issue in the instant case, we conclude that the trustee in bankruptcy did not acquire the malpractice action against defendant.

For reasons stated, the judgment of the Circuit Court of Bureau County dismissing the trustee in bankruptcy's suit for malpractice against Edwin Jones III is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.