In re Will K. ELLWANGER and Helen Ellwanger, husband and wife, aka Wilhelm Karl Ellwanger and Helen Darline Ellwanger, Debtors.

Will K. ELLWANGER & Helen Ellwanger, Plaintiffs,

v.

Brian L. BUDSBERG, Trustee, Defendant.

Bankruptcy No. 84–31238.

Adv. No. 92–31705.

United States Bankruptcy Court, W.D. Washington.

May 6, 1992.

---

Brian L. Budsberg and Owens Davis Mackie, Olympia, Wash., trustee for Ellwanger Bankruptcy Estate.

Jay C. Immelt, in pro per.

Arnold Kessler, Wilner, Klein & Siegel, Beverly Hills, Cal., for Meadows.

Gary C. Wunderlin, Allard, Shelton & O'Connor, Pomona, Cal., for McBroom Estate.

John T. Robson, Jr., Tacoma, Wash., for Will Ellwanger.

Noel P. Shillito, Shillito & Giske, Tacoma, Wash., for Helen Ellwanger.

Charles A. Johnson, Asst. U.S. Trustee, Office of U.S. Trustee, Seattle, Wash.

Kevin Lancaster, Veen & Associates, San Francisco, Cal., Special Counsel for trustee in state court action.

## DECISION: OWNERSHIP OF CAUSES OF ACTION

PHILIP H. BRANDT, Bankruptcy Judge.

## I. ISSUES

A. *Jurisdiction:* Whether the Bankruptcy Court has jurisdiction over a malpractice claim which arises out of legal representation both pre- and post-petition, but which became irremediable, and therefore accrued under state law, post-petition.

B. *Property of the Estate:* Whether that malpractice claim is property of the estate.

## II. HISTORY

In 1981 Debtors Will and Helen Ellwanger, then married, lived in Gig Harbor, Washington. In late August of that year, Helen Ellwanger went to visit her terminally ill mother, Betty Joyce McBroom, who was hospitalized in California. During the visit, Ms. Ellwanger received a quitclaim deed to her mother's home. The mother's will, apparently also executed during the visit, provided for undivided one-fifth interests in her estate to go to her husband and each of her four children. Mrs. McBroom died a week later, and Helen Ellwanger was appointed administratrix.

Rather than probate the will, Helen Ellwanger recorded the quit-claim deed. Thereafter, other family members brought action against Helen Ellwanger in California Superior Court (*Estate of Betty Joyce McBroom*, No. PW 4011, San Bernadino County) to recover the residence. When Helen was sued by the new administrator, the Ellwangers retained James B. Eglin to represent her. Although Will Ellwanger was neither named a defendant nor served, Eglin entered a general appearance for both. After some initial activity in the case, Helen Ellwanger substituted herself for Eglin. In September of 1983, Roger Meadows was retained to represent Will Ellwanger in the suit.

After a four day trial, the Court found Helen Ellwanger had knowingly made false representations and obtained the residence by fraud and trickery. The Court ordered the property returned to the estate, and appointed Martin McBroom as administrator. Mr. McBroom then brought action against Helen Ellwanger under Cal.Prob. Code § 612 (West.1989), which imposes a penalty of twice the value of property embezzled or concealed from decedent's estate. On 23 March 1984, the Superior Court entered judgment for a penalty of $240,000, plus a surcharge of $53,792.63 on

Mr. McBroom's objection to Helen Ellwanger's inventory.[1]

Ellwangers filed for relief under Chapter 11 of the Bankruptcy Code [2] on 11 June 1984. Meadows continued to handle the McBroom Estate matter, initiating an appeal of the judgment. The McBroom Estate obtained relief from stay on 15 October 1984. On 30 October 1984, Helen Ellwanger filed a Motion to Maintain Stay, which was heard 6 November. Judge Robert W. Skidmore reinstated the stay until 15 November 1984; an Order so providing was entered 14 November 1984, and ends, "... at which time it shall be lifted without further order of this Court to allow proceedings in the Superior Court for the State of California to continue."

On motion of the Creditors' Committee, Kenneth Graybeal was appointed trustee in the Chapter 11 by order entered 29 November 1984.

The Ellwangers' marriage was dissolved in late December of 1984.

On 29 January 1985, the trustee moved for an order authorizing him to discontinue the appeal, on the basis that the California court had sufficient evidence to make the findings it made. The motion was heard 12 February 1985, and Judge Robert W. Skidmore authorized the discontinuance if debtors did not make the necessary appeal arrangements and pay the costs by 20 February 1985, entering his Order re: Trustee's Motion to Discontinue Appeal on that date. The California Court of Appeals, Fourth District, dismissed the appeal 4 March 1985 for failure to pay transcript fees. Helen Ellwanger filed a Motion and Declaration to Reinstate Appeal, which was heard 3 May 1985; Judge Skidmore took the matter under advisement. There is no disposition of record of the Motion to Reinstate Appeal.

On the trustee's motion, the Ellwanger bankruptcy was converted to Chapter 7 on 11 June 1985.

Will Ellwanger filed a malpractice action against Eglin and Meadows, No. OCV 36849 in the Superior Court of California, San Bernadino County, on 31 October 1985, alleging legal malpractice committed by Eglin between January and August of 1983, legal malpractice by Meadows from September 1983 through February of 1985, and fraudulent concealment of material facts against Eglin, and breach of fiduciary obligation and conversion against Meadows (herein collectively the "malpractice claims" or "causes of action"). Ellwanger sought damages for "judgment for $240,000.00 against the plaintiff, injury to reputation, bankruptcy, loss of business, other past and future pecuniary loss, and past and future emotional distress and mental anguish." Helen Ellwanger evidently also filed her own separate malpractice actions against Meadows; the record here does not disclose when, the damages alleged, the identity of any other parties, or its disposition or present status, although at hearing counsel indicated that both Ellwangers are plaintiffs in the pending action: apparently, the two cases have been consolidated.

The malpractice claims were never scheduled as assets in the bankruptcy, nor were they disclosed to the trustee. The trustee's Final Report was approved on 27 August 1986, and an order approving his Amended Final Report was entered 24 November 1986. Debtors (at least Will Ellwanger), assert(s) that they (or he) requested the prior trustee to pursue the malpractice action, who declined, and that they (or he) believed it had been abandoned; Mr. Graybeal's affidavit is that he was unaware of any malpractice action. At the 12 February 1985 hearing, the Trustee's counsel indicated a willingness to abandon the estate's interest in the appeal of the California Superior Court decision, and the Order entered 20 February 1985 concludes:

If the arrangements for the costs of appeal and the employing of an attorney for Feb 22, 1985, is not completed by

---

1. The Bankruptcy Appellate Panel held the penalty dischargeable and the surcharge nondischargeable. *In re Ellwanger,* 105 B.R. 551 (9th Cir.BAP 1989).

2. 11 U.S.C.: references to "§", "Section" or to "Chapter", without more, are to the Bankruptcy Code.

February 20, 1985, the trustee may abandon the property involved in that appeal to the debtors and shall no longer be responsible for processing the appeal.

The docket discloses neither any notice of the trustee's intention to abandon such property, or any malpractice claim, nor any order or other document from the trustee actually abandoning the appeal, the property, or the malpractice claims.

Debtors' Discharge was entered 4 April 1988.

The malpractice cases went on independent of any bankruptcy proceedings until late 1990, when the McBroom Estate became aware that a settlement of Will Ellwanger's Eglin malpractice claim was in the offing. The McBroom Estate's counsel advised Mr. Ellwanger's counsel that the proceeds were property of the bankruptcy estate, and requested the settlement be turned over to the estate. Counsel declined to do so, at least without court order. Through Washington counsel, the McBroom Estate moved to reopen the bankruptcy. The Court determined that the case had not been closed, and appointed Brian Budsberg as successor trustee.

Mr. Budsberg commenced an adversary proceeding (*Budsberg, Trustee v. Will K. Ellwanger, et al.*, No. A90–34611) in this Court to determine the ownership of the Eglin malpractice claim. The day before he retired, on 31 January 1991, Judge Skidmore entered a Memorandum Decision determining that the settlement, to the extent it was for pre-petition malpractice, was property of the estate. There were further proceedings to determine the extent to which the $200,000 settlement for Eglin's malpractice was, under Judge Skidmore's ruling, property of the estate. That issue was heard on summary judgment by the Honorable Frank D. Howard on 8 July 1991. On 29 August 1991, Judge Howard entered an Order on Summary Judgment determining all the Eglin settlement proceeds were property of the bankruptcy estate.

The inevitable fee applications followed, and on 23 January 1992, I entered an Order on Appointments and Fee Applications, appointing Ellwanger's California counsel as special counsel for the estate *nunc pro tunc* and awarding fees on the basis of the 50% contingency fee agreement signed 20 October 1985 by Mr. Ellwanger, and on counsel's reconstructed time records (which would support a greater fee on an hourly basis), proportionately discounted for clerical time and time spent opposing the estate in litigating the ownership of the Eglin cause of action. I also awarded fees to the McBroom Estate's counsel for assisting in recovery of substantial assets for the estate under § 503(b)(3)(B), with costs to each counsel. Finally, I entered an order appointing Ellwanger's California counsel as counsel for the estate in the ongoing case against Meadows, which remains pending, and is set for trial in San Bernadino County in early June 1992. I declined at that time to allocate ownership of the claim between the estate and Ellwangers. Ellwangers have since obtained new counsel in the California action.

### III. PROCEDURE

On 5 March 1992, Jay C. Immelt filed his Motion and Declaration to Determine Ownership [of] Action, to Disallow Claim and to Vacate Fee Award and for Sanctions. Mr. Immelt, now married to Helen Ellwanger, was counsel for her in the bankruptcy and the appeal, *In re Ellwanger*, supra, at note 1. On 9 March, Helen Ellwanger joined in those motions; Meadows and Will Ellwanger joined in the motion to determine ownership on 9 and 20 March, respectively. The trustee and the McBroom Estate opposed the motion, the McBroom Estate seeking sanctions.

At hearing on 26 March 1992, I queried whether Bankruptcy Rule[3] 7001 did not require an adversary proceeding, and after hearing from counsel, decided that it did. Counsel then stipulated to my recasting the pertinent pleadings into adversary proceeding, and to treating the hearing as a trial on stipulated facts, rather than as a motion

---

**3.** Formally cited: Fed.R.Bankr.P.

or cross motions for summary judgment. I entered the Order Opening Adversary Proceeding 8 April 1992.

## IV. ANALYSIS

A. *Contentions:* Immelt, Meadows, and the Ellwangers ("movants") contend that the malpractice causes of action against Meadows did not exist at the time of the Ellwangers' petition, as they had not accrued under California law until the malpractice became irremediable upon dismissal of the appeal of the McBroom Estate action in March of 1985. They argue that the claims were not, at the time of filing, an interest in property comprehended by § 541(a). Alternatively, if Ellwangers had some interest in the malpractice claims at the time of their petition, the movants argue that, since legal malpractice claims are not voluntarily or involuntarily assignable under California law, the interest did not become property of the estate. Next, they assert that, if the interest did become property of the estate, it was abandoned, and finally, that the estate is equitably or collaterally estopped from claiming ownership of the malpractice claims. Counsel for Meadows further submits the Bankruptcy Court has no jurisdiction over the malpractice claims because of the California public policy against assignability of such claims.

The Trustee and the McBroom Estate question Immelt's and Meadows' standing and respond that, whatever may have been the case under § 70 of the Bankruptcy Act[4], nonassignability (for whatever reason) is irrelevant under the Bankruptcy Code, as is accrual under state law. They submit Ellwangers had a contingent or future interest in the malpractice claims at the time of their petition, which was never abandoned, and that no estoppel applies.

The McBroom Estate also seeks sanctions.

■ B. *Jurisdiction:* A Bankruptcy Court has jurisdiction to determine its jurisdiction. *Matter of Visioneering,* 661 F.2d 119 (9th Cir.1981).

■ *Ellwanger v. Meadows* relates to both assets and liabilities of the estate, and the representation in question straddles the petition date. The suit's outcome will affect the administration of the estate, and therefore is within Bankruptcy Court jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b); *Kaonohi Ohana, Ltd. v. Sutherland,* 873 F.2d 1302, 1306–1307 (9th Cir.1989).

■ C. *Standing:* Ellwangers, as Debtors, and Mr. Budsberg, as trustee representing the estate, have standing to litigate the ownership of the malpractice claims.

■ Mr. Immelt, as a potential administrative claimant (although he has not yet requested payment, he indicates he will) has no standing in this proceeding to determine and collect property of the estate, which is exclusively in the trustee's purview. Section 704(1); *Matter of Perkins,* 902 F.2d 1254 (7th Cir.1990). Parenthetically, while a potential administrative claimant could be expected to argue for bringing everything possible into the estate, Mr. Immelt's taking of the opposite position suggests that his "administrative claimant" posture is a false flag, and that his purpose is to further Helen Ellwanger's interest and his own as her spouse. Had Ellwangers not, through counsel, adopted Mr. Immelt's motion as their own, I would be inclined summarily to strike it and his supporting papers.

■ Similarly Meadows, as the adverse party in malpractice litigation, has no standing in this proceeding. His desire to know who, exactly, the opposing litigants are is insufficient. I understand, from argument, that Meadows has counterclaimed against Helen Ellwanger. If that counterclaim is based on her pre-petition conduct, it may be nugatory, as Meadows has never sought relief from stay or the post-discharge injunction of § 524(a)(2), nor has

---

4. Which brought into the estate:
   property, including rights of action, which prior to the filing of the petition he [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered....
   11 U.S.C. § 110(a)(5) (1966).

Meadows filed a proof of claim in the Ellwanger bankruptcy. In any event, the logical stance for Meadows as creditor to take would be to seek inclusion of the malpractice claims in the bankruptcy estate, rather than to exclude them. Meadows' stance appears tactical, seeking to choose his plaintiffs, rather than a principled legal position. This appearance is reinforced by the fact that Meadows has previously (evidently with other counsel) taken the position in the California courts that Helen Ellwanger had no standing to bring her malpractice action because it was part of the bankruptcy estate. See, *Helen Ellwanger v. Meadows*, discussed in part IV. D., below.

■ Although the McBroom Estate is a party in interest (and, refreshingly, acting consistently with its proclaimed status), it lacks standing for the same reason.

D. *Property of the Estate:* With exceptions not here pertinent, a bankruptcy estate consists of "... all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(a)(1).

Judge Skidmore, in his 31 January 1991 Memorandum Decision respecting the Eglin settlement proceeds, stated:

Mr. Ellwanger argues that although Eglin and Meadows committed several acts of malpractice from the period when they were first retained until the appeal of the California case was dismissed in March, 1985, it was not until the damages became irredeemable that Wilhelm Ellwanger's case of action for legal negligence actually accrued. Ellwanger's appeal of the underlying judgment *In re Estate of McBroom*, became final on March 4, 1985 in the Court of Appeals, the debtor argues that it was not until the finality of this determination that his cause of action accrued. Thus, it is Ellwanger's position that since this date fell after the filing of the bankruptcy petition the cause of action cannot be considered an asset of the bankrupt estate. He relies mainly on the case of *Robinson v. McGuinn* [McGinn], (1987) 195 Cal. App.3d 66 [240 Cal.Rptr. 423] for establishing the time in which at which a cause of action for legal malpractice accrues.

The debtor's position collapses into one analysis several distinct concepts of law. While state law defines the nature of a debtor's interest in property, whether this interest is property of the estate is a matter of federal bankruptcy law. The assets of the bankruptcy estate include "all legal or equitable interests of the debtor in property as of the commencement of the case." Bankruptcy Code 541(a)(1). Legislative history states that the scope of this paragraph is intended to be very broad.

To attempt to define when the debtor's interest in the subject cause of action arose based on when it accrued for purposes of a state's statute of limitation is conceptually flawed. The debtor's cause of action involves legal representation which occurred pre-petition, if this representation was negligent the debtor had a contingent claim against his attorneys for these services then. Although, this contingent interest may never come to fruition if the harm is remedied before finality, this does not alter the fact that the debtor's contingent interest arose when the representation occurred. This contingent interest passed to the estate at the time of the bankruptcy filing. [citation completed]

Judge Skidmore ruled that the Eglin settlement was property of the estate except to the extent it related to post-petition negligence, and Judge Howard's Order on Summary Judgment held it entirely property of the estate.

In contrast, the California Court of Appeal, Fourth District Division Two, in an unpublished opinion filed 1 May 1989 in *Helen Ellwanger v. Roger Meadows, et al.*, No. E005581 (Superior Court No. OCV 36919), reversed summary judgment for Meadows, which the Superior Court had granted on the basis that the malpractice claim was an asset of the bankruptcy estate and not abandoned, and that Ms. Ellwanger therefore lacked standing, holding:

If the cause of action did not accrue until after June 11, 1984 (the date of filing of bankruptcy), it did not exist "as of the commencement of the case" and is not property of the estate. Nor was it rendered property of the estate by the conversion of the proceeding to a Chapter 7 case on October 11, 1985. [citations omitted]

The Appellate Court reversed and remanded for determination of when damages were incurred, when they became irremediable, and if made necessary by those factual determinations, the transferability issue.

■ 1. *Accrual/Interest in Property:* Movants correctly point out that, while § 541(a) is broad and all-embracing, neither that section nor any other Bankruptcy Code provision determines the threshold question of whether debtors have an interest in a particular item of property or the extent of that interest: those questions must be determined by non-bankruptcy (in this case, California) law. *In re Farmers Markets Inc.,* 792 F.2d 1400 (9th Cir.1986); *In re FCX Inc.,* 853 F.2d 1149 (4th Cir. 1988). Movants argue that the California Court of Appeal was correct in *Helen Ellwanger v. Meadows,* quoted above, and that, since the damage became irremediable only after the petition date, there was no extant cause of action which could be an interest in property as of filing, citing *Collins v. Federal Land Bank of Omaha,* 421 N.W.2d 136 (Ia, 1988) for an application of the principle in the bankruptcy context. In *Collins,* the Supreme Court of Iowa held that a legal malpractice claim for improper advice regarding the plaintiff's choice of Chapter under which to file inherently could not accrue until the bankruptcy filing, and therefore debtor had no interest in that cause of action prior to filing.

With all respect to the California Court of Appeal, Judge Skidmore's ruling is consistent with controlling authority: *In re Neuton,* 922 F.2d 1379 (9th Cir.1990) (affirming the Bankruptcy Appellate Panel in holding the bankruptcy estate included the debtor's contingent rights to share in a trust's income if he survived his wife and in the trust corpus if alive at the termination of the trust, when debtor's spouse died post-filing); *In re Ryerson,* 739 F.2d 1423 (9th Cir.1984) (affirming the Bankruptcy Appellate Panel's holding that the bankruptcy estate included money debtor became entitled to eight months after his petition, although he had only an unvested contingent interest at the time of filing). See also, *Tignor v. Parkinson,* 729 F.2d 977, 980–981 (4 Cir.1984). *Collins,* even if it were binding, does not require a different result: the Iowa court did not analyze the implications of a possible inchoate or contingent interest.

If a bankruptcy estate includes a contingent claim vested only upon death of a debtor's spouse, I see no reason why this one does not include a contingent claim accruing upon death of debtors' appeal.

■ 2. *Assignability/Public Policy:* a. *Goodley's progeny:* The tactical nuke in movants' arsenal is their contention that, as a matter of public policy, claims for legal malpractice are inherently personal, and neither voluntarily nor involuntarily assignable. They rely principally upon the leading case of *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (Cal.App. 2 Dist.1976) and its progeny, including *Jackson v. Rogers & Wells,* 210 Cal.App.3d 336, 258 Cal.Rptr. 454 (Cal.App. 4 Dist.1989) and *Kracht v. Perrin, Gartland & Doyle,* 219 Cal.App.3d 1019, 268 Cal.Rptr. 637 (Cal.App. 4 Dist.1990).

The *Goodley* Court stated its:

... view that a chose in action for legal malpractice is not assignable is predicated on the uniquely personal nature of legal services and the contract out of which a highly personal and confidential attorney-client relationship arises, and public policy considerations based thereon.

133 Cal.Rptr., at 86.

Those considerations, in the *Goodley* Court's view, include the fiduciary nature of the attorney-client relationship, and the attorney's duty of "... most conscientious fidelity and undivided loyalty", the fact that their relationship is so confidential and personal that, absent client permission, the attorney's side of the attorney-client con-

tract cannot be assigned, nor can the attorney substitute other counsel without client consent. Further, the attorney's duty to *Goodley's* assignor was purely personal to her, and the assignor was the only intended beneficiary of the attorneys' performance. After observing that the personal nature of the duty owed the client

"... does not perforce convert the breach thereof to a 'tort of purely personal nature' on a par with those wrongs done to the person of the injured party or his reputation or feelings which fall within the exception to the general rule of assignability; ... but neither does the damage alleged to be a direct consequence of defendants' negligent breach of duty converted to a claim 'for property damages' arising out of a 'non-personal tort' that is freely assignable[.],

the Court articulated what did:

It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment. The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The most certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client. [footnotes omitted]

133 Cal.Rptr. at 87.

*Jackson v. Rogers & Wells*, 258 Cal.Rptr. at 458, indicates *Goodley* remained the law of California and a number of other states in 1989, notwithstanding the more commercial nature of current law practice (see footnote 3), and *Kracht v. Perrin, Gartland & Doyle* applied the principle to involuntary assignments, holding a judgment creditor obtained no right of action to sue with a statutorily-compelled assignment to her of her judgment debtor's legal malpractice claims. See also, *Bank IV Wichita, N.A. v. Arn, Mullins, Unruh, Kuhns & Wilson*, 250 Kan. 490, 827 P.2d 758 (1992), (Kan.), R. Mallen and J. Smith, *Legal Malpractice*, 3d Ed. (West 1989), § 7.7, at pages 367–372 and 1991 pocket part, and annotation, *Assignability of Claim for Legal Practice*, 40 ALR 4th 684 and September 1991 Supplement. The two secondary sources note that nonassignability is not the law in all states, and that many courts have ruled on cases arising out of assigned legal malpractice actions without comment.

Movants claim the nonassignability policy directly or indirectly keeps such claims out of bankruptcy estates, citing, *inter alia, Christison v. Jones*, 83 Ill.App.3d 334, 39 Ill.Dec. 560, 405 N.E.2d 8 (Ill.App. 3 Dist.1980), *In re Baker*, 709 F.2d 1063 (6th Cir.1983), and *Scarlett v. Barnes*, 121 B.R. 578 (Bkrtcy., W.D.Mo.1990).

b. *Operation of Law:* There are one and one-half defects in movants' position: taking the half first, it is not self-evident that, under California law, a claim for legal malpractice would not pass by operation of law, as, for example, to the malpractice plaintiff's heirs in the event of death, or to the successor of a corporate plaintiff merged out of existence or dissolved. As noted in *Jackson v. Rogers & Wells*, at 458,

legal malpractice claims are not assignable under Illinois law. However, Appellate Court of Illinois held, overruling a dismissal, that the administrator of the estate could pursue a legal malpractice action after plaintiff's death. *Jones v. Siesennop,* 55 Ill.App.3d 1037, 13 Ill.Dec. 800, 371 N.E.2d 892 (Ill.App. 1 Dist., 1977). A California court might reach a similar result.

Additionally, the California Court of Appeal, Fourth District, in a case affirming a summary judgment dismissing a legal malpractice case on the basis of a statute of limitations and the inapplicability of any waiver argument, stated:

> Konold and Loadman contend ABA lacks standing to prosecute this appeal because it filed for bankruptcy and a trustee has been appointed. A bankrupt's cause of action becomes part of the bankruptcy estate upon the filing of the petition in bankruptcy. [citations omitted]

*ABA Recovery Services, Inc. v. Konold,* 198 Cal.App.3d 720, 244 Cal.Rptr. 27, 31 (Cal.App. 4 Dist.1988).

The *Konold* court went on to say that, notwithstanding the transfer by operation of law, the original plaintiff could prosecute the action until the bankruptcy trustee took action.

Finally, the California Court of Appeal decision in *Helen Ellwanger v. Meadows* (quoted above) is nonsensical if her legal malpractice claim against Meadows could under no circumstances become an asset of the bankruptcy estate. Were that California law, when the claim accrued with relative to her filing in bankruptcy would be immaterial, and the remand pointless.

c. *Federal Law:* The more fundamental flaw in movants' position is that federal bankruptcy law, rather than assignability or public policy under state law, determines whether the malpractice claims are property of the estate. The Ninth Circuit examined Congress's expansion of the composition of the property of bankruptcy estates in enacting the Code in the Bankruptcy Reform Act of 1978, and held:

Thus, regardless of whether a personal injury claim is transferable or assignable under state law, such claims become part of the bankruptcy estate under § 541. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 708–709 (9th Cir.1986).

In so doing, it rejected the Sixth Circuit's conclusion in *In re Baker, supra.* Notably, the Sixth Circuit has also explicitly rejected *Baker,* citing *Sierra Switchboard* with the same quotation. *In re Cottrell,* 876 F.2d 540 (6th Cir.1989).

Although none of the circuits relied on or even cited § 541(c)(1), that section provides in pertinent part:

> ... an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable non-bankruptcy law—
>
> (A) that restricts or conditions the transfer of such interest by the debtor;
>
> .     .     .     .     .

California's nonassignability · public policy appears to be precisely the sort of non-bankruptcy restriction on transfer which Congress invalidated.

Movants misapprehend *Scarlett v. Barnes, supra.* After the usual procedural explication, the Missouri District Court noted that the parties (Scarlett and her bankruptcy trustee) "... agree that the [legal malpractice] cause of action is property of the bankruptcy estate because it accrued prior to issuance of the final decree discharging Scarlett." [footnote omitted] 121 B.R., at 579.[5] The Court went on to analyze whether or not the debtor was entitled to exempt property out of the estate under the Missouri exemption scheme, and concluded she could, because Missouri's statute allowed exemption of property exempt from attachment or execution. The Court also concluded Missouri would hold a legal malpractice claim nonassignable and exempt from execution. Will Ellwanger's Amended Schedule B–4, filed with his certification dated October 7, 1985,

---

**5.** Also the case here: the latest arguable date for accrual of the malpractice causes of action is in

March of 1985; Ellwangers were not discharged until April of 1988.

claims various exemptions under Chapter 6.16 of the Revised Code of Washington, none of which purport to include any cause of action. Nor is there an indication in the record that Helen Ellwanger ever attempted to exempt her malpractice claim. *Scarlett v. Barnes* does not reinforce movants' position.

Nor does *Christison v. Jones, supra,* gain movants anything: that was a state court's determination under the Bankruptcy Act, rather than the Bankruptcy Code; as noted in *Sierra Switchboard, supra,* Congress substantially broadened the ambit of property of the estate when it enacted the Code in 1978. Whatever force that case may have had, it has been eviscerated by the Code.

A number of state courts have recognized the primacy of federal law in determining malpractice causes of action were property of bankruptcy estates. The Iowa Supreme Court in *Collins v. Federal Land Bank, supra,* held five of the six causes of action at issue there were property of the estate, and upheld dismissal of the debtor's claims without prejudice to the bankruptcy trustee's right to seek recovery on them. Likewise, in New York, the Appellate Division has held malpractice causes of action accrued before discharge and neither scheduled in the plaintiffs' bankruptcies nor abandoned in those proceedings remain property of their bankruptcy estates. *DeLarco v. DeWitt,* 136 A.D.2d 406, 527 N.Y.S.2d 615 (1988), and cases cited 527 N.Y.S.2d at 616, *Quiros v. Polow,* 135 A.D.2d 697, 522 N.Y.S.2d 596 (1987), app. dism., 72 N.Y.2d 840, 530 N.Y.S.2d 555, 526 N.E.2d 46 (1988).

d. *Nonassignability Applied:* Finally, it is far from clear that a California court, applying the public policy considerations articulated in *Goodley* to the facts here, would conclude that the bankruptcy estate should not have the right to prosecute the Ellwangers' malpractice claims: Ellwangers have fiduciary duties to the estate, and a transfer by operation of law to an entity which is in essence their *alter ego* is

not the equivalent of auctioning off such claims to strangers or factoring them, nor does it encourage unjustified suits or force attorneys to defend themselves against casual purchasers of causes of action.

In an analogous situation, the Supreme Court of Maine stated, in a case in which the plaintiff was a judgment creditor who had obtained in settlement the malpractice claim of her opponent in the underlying action:

> We hold first that there is no reason to prohibit the assignment of a legal malpractice claim in a situation such as this. We are not here confronted with the establishment of a general market for such claims; this assignee has an intimate connection with the underlying lawsuit. Although some cases from other jurisdictions flatly prohibit the assignment of any legal malpractice claim, e.g., *Goodley v. Wank and Wank, Inc.,* 62 Cal.App.3d 389, 397, 133 Cal.Rptr. 83, 87 (1976); *Christison v. Jones,* 83 Ill.App.3d 334, 338–39, 39 Ill.Dec. 560, [563], 405 N.E.2d 8, 11 (1980), their reasoning is not persuasive. A legal malpractice claim is not for personal injury, but for economic harm. *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 526, 539 A.2d 357, 359 (1988). The argument that legal services are personal and involve confidential attorney-client relationships does not justify preventing a client like 3K from realizing the value of its malpractice claim in what may be the most efficient way possible, namely, its assignment to someone else with a clear interest in the claim who also has the time, energy and resources to bring the suit. The Superior Court properly denied the lawyer defendants' motion to dismiss.

*Thurston v. Continental Casualty Co.,* 567 A.2d 922, 923 (Me.1989).

e. *Reprise:* I conclude that, while California's public policy-based nonassignability might not preclude transfer of legal malpractice claims by operation of law [6], federal law controls. I see no basis for distinguishing California's nonassignability

---

**6.** If so in the probate context, the state's implicit public policy would promote lawyers' hiring assassins *ex post facto,* rather than obtaining malpractice coverage *ex ante.*

of the emotional distress claims (which *Sierra Switchboard* held ineffective to keep such claims out of the bankruptcy estate), from its policy against assignability of legal malpractice claims (which, as the Maine Supreme Court noted in *Thurston*, are essentially economic: in the case at bar, the only non-economic damages sought are for emotional and mental distress).

With exceptions not here pertinent, Congress, in § 541(c), unambiguously invalidated restrictions such as California's nonassignability of legal malpractice claims. There is nothing in the Bankruptcy Code to warrant my reading into it a public policy exception not clearly contemplated by Congress, and I am no more willing to do so than was the Ninth Circuit willing to read one not found in Washington law into the Revised Code of Washington in *Ikuno v. Yip*, 912 F.2d 306 (9th Cir.1990). The Court there rejected arguments that the unique and personal nature of the attorney-client relationship prohibits execution on a legal malpractice claim under Washington statute, absent a clear prohibition.

Movants' tactical nuke is a Bent Spear.[7]

■ 3. *Abandonment:* Section 554 allows the trustee to abandon, or the court (on motion of a party in interest) to order the trustee to abandon, property burdensome or of inconsequential value and benefit to the estate, after notice and a hearing. Bankruptcy Rule 6007 requires notice to all creditors of a proposed abandonments.

There was no such notice given in this case respecting the malpractice claims, nor an order of abandonment. The Order re: Trustee's Motion to Discontinue Appeal of 20 February 1985 upon which movants rely, contemplates a possible future abandonment, and relates to "the property involved in that appeal", rather than any malpractice claim. While a notice of hearing of the trustee's motion was mailed to creditors 31 January 1985, that notice did not indicate the possible abandonment of property, and the underlying motion (evidently not mailed to creditors) told any creditor who looked at the court file or obtained a copy that the relief requested "... would result in certain property located in California to vest in the estate of Betty McBroom in which Helen Ellwanger has the potential one-sixth interest subject to any surcharge or offset the estate may assert against her." That is arguably sufficient notice of possible abandonment of particular California property (presumably Mrs. Ellwanger's mother's residence), but is not plausibly sufficient to inform creditors that malpractice causes of action might be abandoned. *Sierra Switchboard, supra,* at 709–710.

■ 4. *Estoppel:* Although not explicitly briefed, movants have made both equitable and collateral estoppel arguments in support of their position. The equitable estoppel argument is, essentially, that even if the malpractice claims were not formally abandoned, the estate acted as if they had been, the Ellwangers were left to their own devices to pursue those claims, and that it is unfair for the estate now to assert an interest in those claims. The collateral estoppel argument is apparently predicated on the California Court of Appeal's decision in *Helen Ellwanger v. Meadows,* referenced above in part IV. D.

a. *Detrimental Reliance:* Equitable estoppel requires:

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Watkins v. U.S. Army,* 875 F.2d 699, 709 (9th Cir.1989).

Further:

A finding of estoppel must rest on consideration of several factors. Of critical importance is a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations.

**7.** E. Semler, J. Benjamin, and A. Gross, *The Language of Nuclear War[:] An Intelligent Citizen's Dictionary,* 36, 198 (Harper & Row 1987)

Also important is evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct. And, with respect to a claim for either tolling or estoppel, the trier should consider the extent to which the purposes of the limitations period have been satisfied, notwithstanding the delay in filing. [citations and footnote omitted]

*Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981).

As set forth in the preceding section, Ellwangers had no right to rely on an ambiguous and conditional "abandonment", absent explicit notice and an appropriate order. Nor did the trustee know of the malpractice claims, so he could not intend the Ellwangers to rely on the "abandonment". Ellwangers were not ignorant of the facts, and they could have moved at any time for an order requiring the trustee to abandon the malpractice claims. Three of the four elements of equitable estoppel are missing, and even the fourth is (detrimental reliance) is questionable: if the estate recovers on the Meadows claim, and there is a surplus after payment of their just debts and approved costs of administration, Ellwangers will get it.

Finally, under California law:

The trustee may, among other things, allow the plaintiff to pursue the action and await the results, any recovery being first for the benefit of the estate.

*ABA Recovery Services, Inc. v. Konold, supra,* 244 Cal.Rptr. at 37.

b. *Relitigation:* Respecting collateral estoppel, or issue preclusion, the doctrine:

... prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding. 'In both the offensive and defensive use situations the party against whom estoppel [issue preclusion] is asserted has litigated and lost in an earlier action.' The issue must have been 'actually decided' after a 'full and fair opportunity' for litigation. [citations omitted]

*Robi v. Five Platters, Inc.,* 838 F.2d 318, 322 (9th Cir.1988).

The Ninth Circuit went on to say:

Under the doctrine of issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action. The issue in the prior action must be identical to the issue for which preclusion is sought. Only a final judgment that is sufficiently firm can be issue preclusive. The party against whom issue preclusion is asserted must have litigated that issue in an earlier action and lost.

838 F.2d at 326.

Even if the California Court had jurisdiction to decide a core bankruptcy proceeding, and even if it had determined a factual issue (rather than simply finding there was a factual issue for trial) the trustee was not a party to the action, and is not precluded from now asserting ownership of the malpractice claims.

## V. SANCTIONS

No party with standing in this proceeding having requested sanctions under Bankruptcy Rule 9001, I will not award any.

## VI. CONCLUSION

To the extent Meadows committed legal malpractice:

a. on or before Ellwangers' petition for bankruptcy relief on 11 June 1984, or

b. is jointly or severally liable for malpractice committed by Eglin, or

c. committed post-petition malpractice which damaged property of the estate,

the causes of action asserted by Ellwangers in state court in California are property of this bankruptcy estate.

I do not now decide whether, because the causes accrued before Ellwangers' discharge, the entire claims are the estate's, or whether Ellwangers are entitled to exempt any portion of any award or settlement under § 522(d)(11)(E) or otherwise.