In re J.E. MARION, INC. d/b/a Airline Computerized Ticketing, Debtor.

**Bankruptcy No. 94-40219-H4-7.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Aug. 30, 1996.

Reese Baker, Houston, Texas, for debtor.

## MEMORANDUM OPINION ON TRUSTEE'S MOTION TO ASSIGN CLAIMS OF THE ESTATE TO THE CLINGER–ITEC CREDITOR GROUP

WILLIAM R. GREENDYKE, Bankruptcy Judge.

On February 28, 1996 Robbye Waldron, Chapter 7 Trustee, filed a Motion to Assign Claims of the Estate to the Clinger–Itec Creditor Group (Docket #287). On July 11, 1996 a hearing was conducted concerning the motion. At the hearing, the Court held that all claims of the estate, with the exception of the legal malpractice claims against the for-

mer counsel to Debtor, may be assigned to the Clinger–Itec Creditor Group. This opinion constitutes the Court's findings and conclusions regarding the assignability of legal malpractice claims against counsel for a bankruptcy estate.

## I. *Factual Background*

On January 5, 1994 an involuntary chapter 7 petition was filed against J.E. Marion, Inc. ("Debtor"). On April 19, 1994, the Debtor filed a notice of conversion to chapter 11 and the Court entered its order converting the case on April 28, 1994. On March 24, 1995, the case was converted back to chapter 7. Prior to filing the involuntary petition, the Debtor operated an airline computerized ticketing agency. On February 28, 1996 the chapter 7 Trustee filed a Motion to Assign Claims of the Estate to Richard P. Clinger, Benjamin Sokhrin, d/b/a BMS Software Development, West Hills Systems, Inc., Itec, Inc., and General Products, Inc. (hereinafter collectively the "Clinger–Itec Creditor Group" or "Clinger–Itec") pursuant to 11 U.S.C. § 363. Among the assets of the estate are potential claims against parties classified as "insiders", pursuant to 11 U.S.C. § 101(31), including former counsel for the Debtor, Reese Baker and the firm Bennett, Brooks, Baker, and Lange, L.L.P. (hereinafter "Former Counsel for Debtor").

Under the proposed assignment agreement the Trustee would retain a 37.5% interest in any recovery of claims pursued. Furthermore, Clinger–Itec, having the right, but not the obligation to pursue any claims assigned, would indemnify the estate and the trustee for any action taken in the prosecution of such claims by the creditor group. In the event no action is taken by the Clinger–Itec Creditor Group to pursue the malpractice claims, then such claims would revert to the trustee. Trustee believes that the assignment of the legal malpractice claims would allow the estate to share in the benefits of claim prosecution, while simultaneously avoiding the costs to the estate of pursuing such claims. On the other hand, Former

Counsel for Debtor has argued the lack of contractual privity with the proposed assignee and the lack of standing by the Clinger–Itec Creditor Group to prosecute the malpractice claims on behalf of the Debtor and the estate justify denial of the trustee's motion.

It is interesting to note that the Clinger–Itec Creditor Group filed an objection to the first and final fee application submitted by Former Counsel for Debtor, which is currently pending before the Court. In the objection, the Clinger–Itec Creditor Group made a number of serious allegations against Former Counsel for Debtor, including a request that the proposed application for $65,867.24, comprised of $61,669.25 in fees and $4,197.99 in expenses, be stricken by the Court due the alleged egregious acts by the Former Counsel for Debtor. In particular, the objection alleged the work of Former Counsel for Debtor not only provided no benefit to the estate, but rather caused the estate great harm by allowing waste of its assets and by allowing the estate to knowingly incur significant unpaid post-petition debt. In addition, the objection alleged that Former Counsel for Debtor is responsible for the total collapse of the estate's value.[1] The Clinger–Itec Creditor Group also filed a separate motion for sanctions against Former Counsel for Debtor.

## II. *Discussion*

■ There are no reported cases regarding the issue of whether a trustee in bankruptcy may assign a legal malpractice claim against an attorney or former attorney of an estate. Therefore, the first issue regarding the assignability of legal malpractice claims in the bankruptcy context is whether such claims are included as property of the bankruptcy estate pursuant to 11 U.S.C. § 541. Section 541 defines property of the estate as all property, wherever located and by whomever held, as well as any interest in property that the estate acquired after the commencement of the case. *See*, 11 U.S.C. § 541(a)(7) (1978).

1. In the objection, the Clinger–Itec Creditor Group attached various letters as exhibits in order to demonstrate Former Counsel for Debtor's knowledge of the lack of progress in the reorga-

nization process, breach of fiduciary duties to the estate and the Court, as well as the estate's continuing lack of income coupled with substantial expenses accruing to the estate.

The bankruptcy court for the Western District of Washington has held that legal malpractice claims arising out of pre-petition and post-petition representation of a debtor that accrues under state law is property of the estate. *Ellwanger v. Budsberg (In re Ellwanger)*, 140 B.R. 891 (Bankr.W.D.Washington 1992). Consequently, legal malpractice claims may be prosecuted by the trustee. *Id.* The court also noted that "federal bankruptcy law, rather than assignability or public policy under state law, determines whether malpractice claims are property of the estate." *Id.* at 898. Furthermore, although underlying state law prevented the assignability of legal practice claims, the *Ellwanger* court concluded that such restriction on the transfer of claims was invalidated by the bankruptcy code provision which provides that an interest of the debtor becomes property of the estate notwithstanding any provision in applicable non-bankruptcy law that restricts or conditions the transfer of an interest by the debtor. *Id., citing* 11 U.S.C. § 541(c)(1) (1978).

Although the characterization of property of the estate hinges on federal bankruptcy law, state law and related public policy considerations are not without importance. For example, one court has held that actions taken under 11 U.S.C. § 363 concerning the assignment of claims must conform to applicable state law that applies outside of bankruptcy. *See, In re White Crane Trading Co., Inc.*, 170 B.R. 694, 702 (Bankr. E.D.Cal.1994); *cf. Ellwanger v. Budsberg (In re Ellwanger), supra,* at 900.

As a matter of Texas law, legal malpractice claims are non-assignable. *Britton v. Seale*, 81 F.3d 602 (5th Cir.1996); *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313 (Tex.App.—San Antonio 1994, *writ ref'd*); *cf. Stonewall Surplus Lines Insurance Company v. Drabek*, 835 S.W.2d 708, 711 (Tex. App.—Corpus Christi 1992, *writ denied*) (*noting that part or all of a legal malpractice claim may be assigned, just as any other negligence claim*).[2]

The rationale for holding that claims for legal malpractice are non-assignable, unlike other negligence claims, stems from the fundamental nature of malpractice claims versus other "non-personal" causes of action. *Zuniga*, 878 S.W.2d at 315. It has generally been held that contract actions and torts to property are assignable whereas claims for injuries to the person are not. *Christison v. Jones*, 83 Ill.App.3d 334, 39 Ill.Dec. 560, 562, 405 N.E.2d 8, 10 (1980). Interestingly, the court in *Christison* found that claims for legal malpractice entail aspects of both classes:

> [a legal malpractice claim] is primarily a tort action for negligence based upon an attorney's failure to exercise a reasonable degree of skill and care in representing his client. Yet, the duty allegedly breached in such an action arose out of the establishment of the attorney-client relationship by a contract for legal services. *Id.*

Although the tort of legal malpractice does not fit neatly into either category for determining assignability (contract or torts) certain inherent aspects of this type of negligence claim are worth consideration:

> [I]njuries resulting from legal malpractice are not personal injuries, in the strict sense of injuries to the body, feelings or character of the client. Rather, they are pecuniary injuries to the intangible property interests. While focus on these aspects of the malpractice cause of action might indicate placement of it under the class of tort actions for injury personal property, such placement overlooks the personal nature of the relationship ... that exists between an attorney and client. *Christison*, 39 Ill.Dec. at 562, 405 N.E.2d at 10.

These personal considerations flowing from the nature of the relationship between attorney and client, in addition to policy considerations, led the court in *Christison* to hold legal malpractice claims non-assignable. *Id.*

The policy considerations supporting non-assignability of legal malpractice claims have

---

**2.** However, a few states allow the assignability of malpractice claims. *See, Thurston v. Continental Cas. Co.*, 567 A.2d 922, 923 (Me.1989); *Collins v. Fitzwater*, 277 Or. 401, 560 P.2d 1074, 1077–78 (1977), *overruled on other grounds, Lancaster v. Royal Ins. Co.*, 302 Or. 62, 726 P.2d 371 (1986); *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357, 359 (1988).

been well set out by the California court of Appeals in *Goodley v. Wank and Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (1976). Such considerations center around the attorney-client relationship, its personal nature, and the unique quality of legal services provided by attorneys. *Id.; See Also, Moorhouse v. Ambassador Ins.*, 147 Mich.App. 412, 383 N.W.2d 219 (1985). Furthermore, the fiduciary nature of this relationship is in stark conflict with the reversal of roles presented by the assignment of legal malpractice claims.

The assignment of legal malpractice claims also would impair attorneys' duties of loyalty and trust toward their clients and potentially jeopardize confidentiality. *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 342 (Ind.1991). Consequently, "Texas courts have been understandably reluctant to permit a malpractice action by a non-client because of the potential interferences with the duties an attorney owes to the client." *American Centennial Insurance Co. v. Canal Insurance Co.*, 843 S.W.2d 480, 484 (Tex.1992).

In addition, the court in *Goodley* suggested that allowing assignment "could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney had never owed a legal duty." *Goodley v. Wank and Wank, Inc.*, 62 Ca.App.3d at 397, 133 Cal.Rptr. 83; *Moorhouse*, 383 N.W.2d at 219. Merchandising such claims would likely lead to an increase in legal malpractice claims and force the legal profession to defend against individuals lacking privity.[3]

Furthermore, the Indiana Supreme Court stressed in *Picadilly* the possibility that assignments of legal malpractice claims would become "an important bargaining chip for clients without a deep pocket." *Picadilly*, 582 N.E.2d at 343. On a similar note, a Texas court has warned that assignment of such claims would lead lawyers to be reluctant to represent defendants with inadequate insurance and limited assets. *City of Garland v. Booth*, 895 S.W.2d 766, 770 (Tex. App.—Dallas 1995); *Zuniga*, 878 S.W.2d at 317.[4]

In summary, trafficking in legal malpractice claims would place an increased burden on the judicial system and ultimately reduce the "availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client." *Goodley*, 62 Cal. App.3d at 397, 133 Cal.Rptr. 83. In other words, the assignability of such claims would only debase the legal profession. *City of Garland*, 895 S.W.2d at 770.

Beyond mere subscription to persuasive authority offered by other courts, this Court's determination of whether legal malpractice claims should be assignable in a federal bankruptcy context should be "based on the effect it will likely have on modern society, and the legal system in particular." *Picadilly*, 582 N.E.2d at 341. In other words, these policy considerations, in addition to state law considerations, must be extrapolated into the federal bankruptcy context when determining the prudence of assigning legal malpractice claims.

---

**3.** From a historical standpoint, the inalienability or nonassignability of malpractice claims and the original emphasis placed on privity has gradually eroded. *Picadilly*, 582 N.E.2d at 340. In fact, "[t]oday, the non-assignability of a chose in action has become so restricted that it is now the exception to the rule of free assignment." *Id.* With the relevant exception of legal malpractice claims so clearly evidenced by the weight of judicial thought and holdings, one might be hesitant to draw any clear direction from the retreat of privity concerns. In actuality, quite contrary to the trend, the Texas Supreme Court stated that "[u]nder Texas law, attorneys are not ordinarily liable for damages to a non-client, because privity of contract is absent." *American Centennial Insurance Co. v. Canal Insurance Co.*, 843 S.W.2d

480, 484 (Tex.1992). The uncertainty presented by the questionable presence and importance of privity need not be dwelled on here since it is unnecessary to the resolution of the assignability question.

**4.** On the other hand, countervailing policies that might in fact be promoted by the assignment of legal malpractice claims include "enabling the defendant-client to extricate himself from liability, and funding the original plaintiff's judgment." *Zuniga*, 878 S.W.2d at 317. It is the balance of these policies that must be considered in determining the prudence of assigning legal malpractice claims.

### III. *Conclusion*

Having reviewed the weight of state judicial holding and the law followed by a majority of states, this Court concludes that the costs to the legal system of assigning legal malpractice claims in the bankruptcy context outweighs the benefits. Consequently, the legal malpractice claims against Former Counsel for Debtor, while nevertheless property of the bankruptcy estate, are non-assignable pursuant to 11 U.S.C. § 363.