In re David Martin SWIFT, Debtor.

David Martin SWIFT, Plaintiff,

v.

Martin W. SEIDLER, Defendant.

Bankruptcy No. 90–51894–C.
Adv. No. 95–5163.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

July 10, 1996.

Robert E. Golden, San Antonio, Texas, for David M. Swift.

James A. Hoffman, George H. Spencer, Jr., Clemens & Spencer, San Antonio, Texas, for Martin W. Seidler.

Laurie A. Weiss, Jack M. Partain, Jr., Fulbright & Jaworski, San Antonio, Texas, for State Farm Life Insurance Company.

**OPINION AND ORDER ON MOTION FOR RECONSIDERATION OF ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER GRANTING PLAINTIFF'S COUNTER–MOTION FOR PARTIAL SUMMARY JUDGMENT, AND FOR ENTRY OF ORDER ESCROWING SETTLEMENT FUNDS IN POSSESSION OF CHAPTER 7 TRUSTEE AND ABATING DISTRIBUTION THEREOF**

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the defendant, Martin W. Seidler's ("Seidler") motion for reconsideration. A motion for reconsideration has also been filed by State Farm Life Insurance Company ("State Farm") in Adversary No. 95–5177–C (hereinafter, State Farm and Seidler together, the "Defendants"). The Defendants' motions for reconsideration relate to the same underlying events and are generally based upon the same grounds. This opinion analyzes both of the Defendants' motions for reconsideration. A separate order based upon the findings and conclusions made in this opinion will also be entered in Adversary No. 95–5177–C.

## BACKGROUND

The Debtor has initiated a state court lawsuit alleging breach of contract, breach of fiduciary duty and negligence against State Farm and legal malpractice against Seidler (together, the "State Court Claims"). The Debtor's lawsuit alleges that because of the negligence or breach of the Defendants, the Debtor's discharge was denied and his claimed exemption of an Individual Retirement Account ("IRA") was disallowed. In their motions for summary judgment, the Defendants argued that because the conduct which allegedly caused the harm to the Debtor occurred pre-petition, the State Court Claims are property of the Debtor's estate, and thus, the Debtor lacks standing to assert the causes of action personally.

In its April 10, 1996 oral ruling, the court denied the Defendants' motions for summary judgment finding that the State Court Claims were not estate property because they accrued post-petition. Because the court found that the estate did not have an interest in the State Court Claims, the court remanded the matter to be adjudicated in state court.

## ANALYSIS

The filing of a bankruptcy petition creates a bankruptcy estate. Section 541 of. the Bankruptcy Code defines what constitutes property of the bankruptcy estate.

(a) The commencement of a case under section 301, 302, 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or

equitable interests of the debtor in property *as of the commencement of the case.* 11 U.S.C. § 541(a)(1) (emphasis added).

■ A bankruptcy case is commenced when the Debtor files a petition for relief. It is undisputed that a cause of action belonging to a debtor as of the petition's filing becomes property of the estate. *Louisiana World Exposition v. Federal Insurance Company,* 858 F.2d 233, 245 (5th Cir.1988) ("Section 541(a)(1)'s reference to 'all legal or equitable interests of the debtor in property' include causes of action belonging to the debtor at the time the case is commenced"). The difficulty posed by the instant facts is determining the point at which a cause of action *belongs* to the debtor.

Determining whether the State Law Claims *belonged* to the Debtor as of the commencement of the case is dependent upon the court's resolution of the following two dispositive questions: 1) had the State Court Claims accrued under Texas law as of the commencement of the bankruptcy case; and 2) even if unaccrued, did the Debtor have a sufficient property interest in the State Law Claims, such that they became estate property as of the commencement of the case? *See,* 11 U.S.C. § 541(a)(1). If the court finds that the answer to either of the foregoing questions is "yes," then the Defendants' motions for reconsideration should be granted.

### ACCRUAL OF A CAUSE OF ACTION UNDER TEXAS LAW

■ It is settled law that the term "all legal and equitable interests of the debtor in property" includes causes of action which have accrued as of the commencement of the case. *See, Wischan v. Adler,* 77 F.3d 875, 877 (5th Cir.1996) (cause of action which was brought pre-petition is property of the estate even if it had "borne fruit in settlement or judgment *after* commencement of the bankruptcy case....") (emphasis added); *Chrysler Credit Corp. v. B.J.M., Jr. Inc.,* 834 F.Supp. 813, 839 (E.D.Penn.1993) ("It is of course indisputable that any causes of action which accrue to a debtor who has filed for relief under the Bankruptcy Act before the filing of the Bankruptcy petition become property of the bankruptcy estate and may

thereafter be prosecuted only by the trustee...."); *Committee of Unsecured Creditors v. Doemling,* 127 B.R. 945, 948 (W.D.Penn. 1991) ("[the defendant's] usurpation of a corporate opportunity—accrued before the debtor filed the bankruptcy petition. Accordingly, this cause of action became part of the estate"); *In re Bronner,* 135 B.R. 645, 647 (9th Cir. BAP 1992) (an accrued claim for personal injuries becomes estate property, even if unliquidated at the time the petition was filed); *In re Bell & Beckwith,* 64 B.R. 144, 147 (Bankr.N.D.Ohio 1986) ("any cause of action which has accrued to the Debtor as of the filing of the petition is property of the estate and may only be prosecuted on behalf of the estate"). Therefore, if the court finds that the State Law Claims had already accrued under Texas law as of the commencement of the case, then the Defendants' motions should be granted.

■ To decide whether the causes of action accrued in the instant matter as of the date of filing, we must first identify the elements which comprise each of the State Law Claims. An attorney malpractice action sounds in negligence. *Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989). The necessary elements for a claim sounding in negligence are: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). "An action in negligence cannot be maintained unless some damage has resulted therefrom." *Johnson v. Sovereign Camp, W.O.W.,* 125 Tex. 329, 83 S.W.2d 605, 608 (1935).

■ In determining when an action for negligence may be asserted, Texas courts employ the "legal injury rule." *Quinn v. Press,* 140 S.W.2d 438 (Tex.1940). Legal injury occurs when it is made apparent that some legally protected interest of the plaintiff has been exposed to a specific and concrete risk of harm. *Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967).

■ The cases applying the legal injury rule largely fall into one of two lines, those in which the underlying negligent conduct was

"lawful" and those in which the underlying negligent conduct was "unlawful." The court in *Zidell v. Bird,* 692 S.W.2d 550 (Tex.App.—Austin, 1985, no writ) explained the difference:

> If the defendant's conduct results in an invasion of the plaintiff's legally protected interest, so that he may obtain an immediate remedy in court, his right of action 'accrues' with the invasion, provided some legally cognizable injury, however slight, has resulted from the invasion or would necessarily do so. The defendant's conduct is, in such case, categorized as 'unlawful.' Conversely, if no right of redress exists by reason of the defendant's conduct, because no legally protected interest of the plaintiff has been invaded at the time of the conduct complained of, the defendant's conduct is categorized as 'lawful' and any cause of action based thereon does not accrue until some invasion of the legally protected interest does occur.

*Zidell,* at 555.

An examination of Texas cases involving "lawful" acts is instructive. In *Atkins v. Crosland, supra,* the Texas Supreme Court focused on when injury occurred such that the cause of action was complete. In *Atkins* the plaintiff's accountant negligently utilized the cash method instead of the accrual method of accounting when preparing the plaintiff's tax returns. The result of that choice was a deficiency assessment by the Commissioner of Internal Revenue. At issue was when the cause of action against the accountant first accrued. The *Atkins* court found that:

> the plaintiff's cause of *action did not arise* until the tax deficiency was assessed by the Commissioner of Internal Revenue. Prior to assessment the plaintiff *had not been injured.* That is, assessment was the factor essential to consummate the wrong—only then was the tort complained of completed. If a deficiency had never been assessed, the plaintiff would have had no cause of action. Thus the use of the cash method, as opposed to the accrual method, was not in itself the type of unlawful act which, upon its commission, would set the statute in motion. In short, in the absence of assessment, injury would not have inevitably resulted.

*Atkins,* 417 S.W.2d at 153 (emphasis added). Because the plaintiff had not been injured until the deficiency assessment, and because causation and harm are necessary elements of the tort, the cause of action was held not to have accrued until the deficiency was assessed. *Id.*

Another case, *Bankruptcy Estate of Rochester v. Campbell,* 910 S.W.2d 647 (Tex. App.—Austin, 1995, *writ granted*), also involved negligent tax accounting advice. Like the *Atkins* court, the *Campbell* court concluded that no cause of action existed until the deficiency assessment was served on the taxpayer. The *Campbell* court concluded that an entity is legally injured as soon as it is aware of "a concrete and specific risk to an economic interest." *Campbell,* 910 S.W.2d at 650. Because at the time the negligent tax advice was given there was no indication of a concrete and specific risk to the plaintiff, the *Campbell* court held that the cause of action did not accrue at that time. Instead, as had the *Atkins* court, *Campbell* decided that the cause of action did not arise until the deficiency notice was rendered. *Id.* at 651.

Admittedly, the foregoing cases involved negligent tax accounting, whereas the causes of action asserted by the Debtor involve attorney malpractice, breach of fiduciary duty, and negligence. Nevertheless, all of these causes of action share as a common element the causation of damages. The actions allegedly undertaken by the Defendants were not, of themselves, "unlawful." Bad advice is just that. Bad advice does not become actionable until that advice has *caused an injury.* Pre-petition, when the allegedly negligent actions of the Defendants were undertaken, there was not any indication of a concrete and specific risk of harm. It was not until after the filing that a concrete and specific risk to the Debtor's interests emerged, to wit, an objection to the Debtor's claimed exemption was filed. The cause of action here, like the causes of action in *Campbell* and *Atkins,* did not accrue until a legal injury occurred—when the debtor's claimed exemptions drew

an objection. That was, in this case, post-petition.[1]

## UNACCRUED CAUSE OF ACTION AS PROPERTY OF THE ESTATE

█ The court's conclusion that the State Law Claims did not "accrue" until post-petition is not, however, the end of the story. Although a finding that a cause of action accrued *pre*-petition would conclusively establish that the cause *did* become estate property upon filing,[2] the inverse would not necessarily true. That is, a finding that a cause of action accrued *post*-petition under applicable state law principles might not, of itself, conclusively establish that the cause could not have become estate property. The Defendants argue that even if the State Law Claims are found not to have yet accrued, the Debtor still had a sufficient "contingent" or "inchoate" interest in them as of the commencement of the case such that they passed to the bankruptcy estate upon filing. *See* 11 U.S.C. § 541(a)(1).

The Defendants maintain that an "inchoate" or "contingent" interest in an otherwise unaccrued cause of action becomes estate property upon filing. They argue that, even if the third element (causation of injury) has not occurred prior to filing, the Debtor still had a sufficient interest in the State Law Claims to make them estate property. According to the Defendants, the Debtor had a "contingent" interest in the causes of action (the contingency being that he would suffer harm)—and that this "contingent" interest was sufficient to become estate property.

As support for this theory of "contingent" interest in a partially accrued cause of action, the Defendants cite a number of bankruptcy decisions which identify a variety of other types of contingent interests which become property of the estate upon filing. *E.g. Askanase v. LivingWell, Inc.*, 45 F.3d 103 (5th Cir.1995) (vested reversionary interest is estate property); *In re Anderson*, 128 B.R. 850 (D.R.I.1991) (vested but contingent claim to the residuary of decedent's estate became property of the bankruptcy estate); *In re Yonikus*, 996 F.2d 866 (7th Cir.1993) (debtor's contingent right to compensation under the Illinois Workers' Compensation Act became estate property).

█ There is no question that Section 541 encompasses contingent interests held by a debtor as of the debtor's bankruptcy filing. However, the Fifth Circuit has explained that whether a debtor's interest in property becomes property of the bankruptcy estate is a function of whether the debtor had an interest, whether legal or equitable, in property cognizable under applicable state law. *Matter of Missionary Baptist Foundation*, 792 F.2d 502, 505 (5th Cir.1986) ("The nature and extent of the debtor's interest in property is

---

1. The court is aware of a line of cases which discuss "accrual date" in the context of applying the statute of limitations to a cause of action. Defining the "accrual date" of a cause of action for purposes of a statute of limitations necessarily incorporates notions of equity and fairness in addition to property right notions. For example, the so-called "Discovery Rule" as it has evolved in Texas creates an exception to the normal rule that a cause of action "accrues" when a wrongful act effects an injury regardless of when the plaintiff learns of that injury. *Moreno v. Sterling Drug, In.*, 787 S.W.2d 348, 351 (Tex.1990). "This rule obtains notwithstanding the fact that the damages, or their extent are not ascertainable until a later date." *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex.1967). Out of notions of equity and fairness, however, Texas courts have also employed the Discovery Rule to toll the "accrual date" of some types of causes of action (instead of tolling the statute of limitations). In fact, when the Texas legislature attempted to abrogate the Discovery Rule in medical malprac-

tice cases by passing an absolute statute of limitations, Texas courts nonetheless held that the Open Courts provision of the Texas Constitution renders an absolute statute of limitations unconstitutional if it sets an impossible precondition to common law remedies. *Nelson v. Krusen*, 678 S.W.2d 918, 921 (Tex.1984).

This opinion declines to reach the question whether the Discovery Rule (or any other exception which tolls the "accrual date" of a cause of action for statute of limitations purposes) would likewise toll the "accrual date" for purposes of deciding whether a cause of action can be said to become property of the estate by operation of section 541(a)(1). We reach the conclusion that, in this case, the cause of action did not "accrue" as of the petition date even without resort to the Discovery Rule and its progeny of cases, because in our view, no "legal injury" was suffered by the debtor until after the filing, regardless when the debtor discovered the injury.

2. *See* discussion *supra*.

analyzed by reference to the applicable state law, here, that of Texas."). Thus, only those contingent interests in property *which are recognized under state law* become property of the estate. *See, Matter of Goff,* 706 F.2d 574, 578 (5th Cir.1983). In fact, even the cases cited by the Defendants for the proposition that contingent interests become estate property acknowledge the need to first determine whether the applicable state law recognizes the proposed contingent interest as an interest in property. As stated by the *Anderson* court:

> Although almost every type of property right and interest enters the bankruptcy estate under section 541, it is state law that determines whether Debtor has a property right or interest in specific property. (citations omitted) Thus [state law] must first be consulted to determine whether Debtor has any property rights or interests at all.

*Anderson,* 128 B.R. at 853.

At issue in the *Anderson* case was whether certain contingent testamentary gifts to the Debtor became property of the estate. Under the testator's (the debtor's mother) will the Debtor was to receive either a portion of the proceeds from the sale of the testator's home, or a $15,000 payment from the debtor's brother. The choice whether to sell the home and distribute the proceeds to his siblings or to keep the house and pay his siblings $15,000 was left to the debtor's brother. The debtor argued that her interest under her mother's will was not property of the estate because it had yet to "materialize" as of the commencement of the case since the brother had yet to make his election. The *Anderson* court looked to state law to determine whether, as of the commencement of the case, the debtor had a *recognizable* prop-

erty interest in the devise under the applicable state law. The court stated;

> Although the payoff of one of these two interests could only occur after [the brother] made his election, the interests themselves were created by the will under [state] law when Debtor's mother died. *See Estate of Forsyth Wickes v. Stein,* 107 R.I. 260, 265, 266 A.2d 911 (1970) ("Equitable ownership of the assets is vested in the legatee upon the death of the testator"); *see, generally* 96 C.J.S. Wills § 1098 (1957) ("In the case of a testate estate, the will, when valid, is the source of the title of the beneficiaries.... [T]itle vests, subject to various burdens, immediately upon the death of the testator").

*Id.* Thus the *Anderson* court found that "[u]nder [state] law when Debtor's mother died testate on April 3, 1990, her will created a property interest belonging to Debtor." As the will created a contingent property interest cognizable under state law, which interest belonged to the debtor as of the commencement of the case, the court had no difficulty concluding that the devise became property of the estate upon filing. *Id.* at 854.

Similarly, the court in *Yonikus,* another case cited by the defendants, found that:

> The question whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law; however, courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case.

*Yonikus,* 996 F.2d at 869. The court went on to find that a contingent right to future compensation under the Illinois Workers Compensation Act was a recognized property interest under state law.[3] Therefore, the court held that the debtor's right to receive

---

3. The *Yonikus* court uses the term "contingent" right to future compensation to evidence the fact that until a decision on his workers compensation claim became final, the debtor's interest in the claim was still "contingent" upon a court's award of compensation. The same can be said of every cause of action. An accrued cause of action that has not been finally decided is nothing more than a "contingent" right to payment.

The right to payment is "contingent" upon the cause of action's success. Thus, by arguing that the Debtor had a "contingent" claim against the Defendants prior to the occurrence of the causation and damages element of the State Law Claims, the Defendants are in essence arguing that the Debtor had a "contingent" interest in a "contingent" right to payment.

such future compensation became estate property when the debtor filed his petition.

The Defendants also cite the court to *In re Ellwanger,* 140 B.R. 891 (Bankr. W.D.Wash.1992) in which the bankruptcy court for the Western District of Washington held, on similar facts, that a cause of action for legal malpractice became estate property. The debtors in *Ellwanger* argued, as does the Debtor in the instant matter, that the cause of action did not belong to the estate because the claim for malpractice did not accrue under state law (California) until post-petition. The procedural posture of *Ellwanger* is somewhat tortured. The debtors, husband and wife ("Will" and "Helen") filed for bankruptcy relief in June of 1984. In October of 1985 Will filed a malpractice action against two attorneys, alleging that he had been harmed by conduct which occurred pre-petition. Helen also filed her own separate malpractice actions against the same two attorneys. In 1989 the California Court of Appeals reversed a superior court decision which had dismissed Helen's cause of action for lack of standing. Specifically, the appellate court held: "If the cause of action did not accrue until after June 11, 1984 (the date of filing of bankruptcy), it did not *exist* 'as of the commencement of the case' and is not property of the estate." *Ellwanger v. Meadows,* No. E005581 (as cited in *In re Ellwanger,* 140 B.R. at 898) (emphasis added).

In late 1990, Will's cause of action was nearing settlement, at which time a motion was filed in the bankruptcy court to determine ownership of the settlement proceeds. On January 31, 1991 Bankruptcy Judge Skidmore held that Will's cause of action was estate property despite the fact that it had not accrued under state law as of the filing date. Bankruptcy Judge Skidmore wrote:

> To attempt to define when the debtor's interest in the subject cause of action arose based on when it accrued for purposes of a state's statute of limitation is conceptually

flawed. The debtor's cause of action involves legal representation which occurred pre-petition, if this representation was negligent the debtor had a contingent claim against his attorneys for these services then. Although, this contingent interest may never come to fruition if the harm is remedied before finality, this does not alter the fact that the debtor's contingent interest arose when the representation occurred. This contingent interest passed to the estate at the time of filing.

January 31, 1991 Memorandum decision of Judge Skidmore, as quoted in *Ellwanger,* 140 B.R. at 897. Then on March 5, 1992, motion was made in the bankruptcy court to determine the ownership of *Helen's* cause of action, still pending in the California Superior Court.[4] This March 5, 1992 motion was the actual subject of the *Ellwanger* decision. As support for her position, Helen relied on an Iowa Supreme Court case, which held that a debtor's legal malpractice claim for improper advice regarding under which chapter to file could not have accrued before the filing of the petition and therefore the debtor did not have an interest in the cause of action prior to the filing. *Collins v. Federal Land Bank of Omaha,* 421 N.W.2d 136 (Ia.1988).

Neither the *Collins* decision nor the California Court of Appeal's decision swayed the bankruptcy court. The *Ellwanger* court found:

> With all respect to the California Court of Appeal, Judge Skidmore's ruling is consistent with controlling authority: (citations omitted) Collins, even if it were binding, does not require a different result: the Iowa court did not analyze the implications of a possible inchoate or contingent interest.
>
> If a bankruptcy estate includes a contingent claim vested only upon death of a debtor's spouse, I see no reason why this one does not include a contingent claim

---

4. Presumably, the case had been pending since the California Court of Appeals 1989 reversal of the earlier dismissal for lack of standing. Although it would appear that the appellate court specifically found that until a cause of action accrues it does not exist under state law, the bankruptcy court in *Ellwanger* reached the topic anew, without reference to any possible *res judicata* effect or discussion of concurrent jurisdiction.

accruing upon death of debtors' appeal.[5] *Ellwanger,* 140 B.R. at 898.

With all respect to the *Ellwanger* court, this court *does* see a reason why the bankruptcy estate should not include this type of so-called "contingent" claim. State law recognizes as valid interests in property such interests as contingent remainders, future interests in contract rights, executory springing interests, and many other contingent property interests. However, to this court's knowledge, state law does not recognize as a legitimate interest in property an inchoate interest in a cause of action that is yet to accrue. Until a cause of action accrues, it simply does not exist under state law.[6] And if state law does not recognize it as an interest in property, neither does the Bankruptcy Code make it property of the estate. *See Missionary Baptist Foundation, supra.*

Section 541 demands that all legal or equitable interests of the "debtor in property" as of the filing become estate property. Property interests are defined under state law. This leaves the court in the difficult if not impossible position of needing to prove the non-existence of a property interest under Texas law. If an interest in property does not exist, then one would not expect to find references to it. That is certainly the case regarding the instant matter. The court's research has not located, nor have the defendants cited the court to, any cases holding that an unaccrued cause of action is a recognized contingent property interest under Texas Law. This is not to say that, because there has not been a case so holding, an unaccrued cause of action could not conceivably be a property interest under Texas law; however, it is strong evidence that Texas does not recognize a so-called "inchoate" or "contingent" interest in an otherwise unaccrued cause of action. At the very least, a federal court should be reluctant to "recognize" a property interest yet to be recognized by the courts of the state whose laws control the "interest in property" question.

Because the Defendants cannot simply point to a Texas case which affirmatively declares that a contingent interest in an otherwise unaccrued cause of action is a valid interest in property under Texas law (because, as noted, there are apparently no such cases), the Defendants next urge the court to employ the analysis often used when deciding what constitutes a "claim" *against* a debtor as of the filing date.

This court in *In re Fairchild Aircraft Corp.,* 184 B.R. 910 (Bankr.W.D.Tex.1995), recently struggled with the definition of "claim" for purposes of deciding whether a given assertion of liability was dischargeable in the bankruptcy process. The court wrote,

> Taken at its word, the definition of claim implies the inclusion of every type of liability which could be traced to prepetition conduct. The definition includes all legal obligations no matter how *remote* or *contingent.* (citations omitted).

> ' These modifying terms will operate to sweep up virtually every liability which could be traced to the debtor's prepetition past. The legal obligation need only be *slight,* and need not be a *present interest.* It might merely be *not assured* and *doubtful or uncertain.* The definition easily includes liabilities which are *afar off* and *conditioned upon future events.* And the statute's legislative history instructs that the definition of claim include all legal obligations, *no matter* how remote or contingent.

*Id.* at 925 (emphasis in original). Despite this broad definition, the court nevertheless went on to state that "the bankruptcy process ought to be fair in the broader, equitable sense. Not every conceivable obligation finding its source in the debtor's pre-bankruptcy past is necessarily an obligation that can be fairly handled by the bankruptcy process." *Id.* Ultimately, this court held that the definition of claim "must be sufficiently broad to include liabilities first manifesting themselves post-confirmation where the conduct which

---

5. The alleged malpractice occurred partially in prosecuting an appeal of a 1984 judgment against the debtors. Thus it was argued that the action did not accrue until finality of the appeal which occurred post-petition.

6. *See* discussion *supra.*

caused the injury occurs pre-petition. But the selfsame definition is also restricted to those claims to which it is also possible to accord fair representation of their interests in the course of the case." *Id.* at 931.

The definition of claim has been and continues to be the subject of much debate among the courts. In fact the Circuits themselves are split on the issue.[7] The court does not intend for this opinion to serve as another foray into that debate. But the subject matter of that debate demonstrates that the fundamental decisional issue behind the definition of "claim" is decisively different from the decisional issue that drives the definition of "property of the estate." The legislative history of section 101(5) reveals an intention by Congress to encompass the broadest panoply of interests in the definition of "claim," including any possible liability of the debtor, no matter how remote. On the other hand, although section 541(a)(1) defines property of the estate broadly, the legislative history behind that section does *not* evidence the same intent to insure that all possible assets of the debtor, no matter how remote, are included in its definition of "property of the estate."[8]

The difference in the legislative intent behind sections 101(5) and 541(a)(1) can in part be explained by the Code's overriding policy of encouraging the debtor's "fresh start." In order to protect the debtor's potential "fresh start" it is necessary, to the extent notions of due process will allow, that a debtor be able to deal with any and all claims arising from the debtor's pre-petition conduct in the bankruptcy proceeding. It is not, however, necessary that any and all *assets* arising from pre-petition conduct be includable in the estate in order to protect the debtor's "fresh start." Indeed, if anything, the debtor's fresh start is better guaranteed by a bright-line rule

that assures that *post-petition* property will *not* be subject to estate administration.

Moreover, the definition of "bankruptcy claim" is wholly a creation of federal law. Because section 101(5) provides solely a federal definition of "claim," an interest may be a "bankruptcy claim" even if it is not recognized as such under state law. Whether a state's law recognizes a given claim as one which is "valid" as of the commencement of the case is simply not the primary inquiry that is made when determining if an interest, asserted *against* the estate, is a "bankruptcy claim" under section 101(5). However, section 541(a)(1) affirmatively relies upon state law to determine what interests of a debtor become "property of the estate." Therefore, although a given interest may be a "bankruptcy claim" under the federal definition of section 101(5) when asserted *against* the estate, if it is one to be asserted *by* the estate, but is not recognized under applicable state law as a valid interest in property as of the commencement of the case, it *cannot* become "property of the estate" under section 541(a)(1).

Thus, because neither the language of the statutes, the policy considerations which underlie those statutes, the intentions of Congress in enacting those statutes, nor the application of the statutes themselves (sections 101(5) and 541(a)(1)) are equivalent, this court cannot accept the Defendants' invitation to decide this case in an identical manner as it would the "bankruptcy claim" issue. Section 541(a)(1) reaches no further than property interests recognizable under applicable state law, and Texas does not recognize, as an interest in property, a so-called "contingent" interest in a cause of action, one in which only some of the elements have

---

7. The Third Circuit has held that the right to payment *must exist* prepetition before a claim can exist. *In re M. Frenville Co.*, 744 F.2d 332 (3d Cir.1984). (emphasis added).

8. The legislative history to § 101(5) states: "[b]y this broadest possible definition, and by the use of the term throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. *It permits the broadest possible relief in the bankruptcy court.*

H.Rep. 595, 95th Cong., 2d Sess. 308–14 (1977) U.S.Code Cong. & Admin.News 1978 pp. 5787, 5963, 6266.

The legislative history behind § 541(a)(1) states: "[t]he scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action, . . . . Though this paragraph will include choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.

occurred as of the commencement of the bankruptcy case.

## The State Law Claims are not Property of the Estate

Section 541(a)(1) does not expand the interests of the Debtor beyond the state law interests that the debtor held as of the commencement of the case. If at the commencement of the case the Debtor owned the State Law Claims, then upon filing the petition, the State Law Claims were transferred to the estate. However, the Debtor could not own the State Law Claims until they *accrued.* To put it simply, a cause of action is either in existence or it is not. Until all elements underlying the cause of action have occurred, the cause of action does not exist under Texas law. Because the court finds that Texas law does not recognize as a valid interest in property a contingent interest in an as-yet-unaccrued cause of action, the court holds that the State Law Claims are the Debtor's individual property and not property of the estate.[9] This holding is consistent with the tenor of recent Fifth Circuit decisions. *See, e.g., Matter of Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir.1994) ("Whether a particular state cause of action belongs to the estate depends upon *whether under applicable state law the debtor could have raised the claim as of the commencement of the case.*") (emphasis added) (citing *S.I. Acquisition,* 817 F.2d at 1142); *Louisiana World Exposition v. Federal Ins. Co.,* 858 F.2d 233, 245 (5th Cir.1988) ("Section 541(a)(1)'s reference to 'all legal or equitable interests of the debtor in property' includes causes of action *belonging to the debtor* at the time the case is commenced.") (emphasis added).

9. The court's confidence in this holding is buoyed by an examination of the consequences of a contrary ruling. For example, if a debtor buys a new furnace six months before filing which, because of negligent wiring, later explodes destroying the debtor's home post-petition, under the Defendants' argument, the cause of action against the furnace manufacturer and electrician would belong to the estate. All of the actions committed by the manufacturer and the electrician were completed pre-petition. The only element not yet in place as of the filing was the causation of damages. Therefore, under the Defendants theory, the debtor had a contingent

## Policy Considerations

The Defendants next assert that the court's ruling confers an unfair windfall upon the Debtor. Defendant Seidler states that the court's ruling will encourage sophisticated debtors to "gamble pre-petition with the understanding that either no one [*sic*] will object to their conduct and that they will get away with it, or if someone objects (regardless, under the court's ruling whether the objector is successful) they will always have a deep pocket to pursue. It's a 'no lose' bet and encourages prospective debtors to act in contravention of the underlying concepts of fairness and honesty of the bankruptcy code with a catch-me-if-you-can attitude." Seidler, Motion for Reconsideration at 6.

Similarly, Defendant State Farm, argues that "[b]y ruling as it did, the Court, albeit unintentionally, has given David Swift a golden opportunity to profit from his own bankruptcy misconduct. The Debtor, in suing State Farm, is trying to reclaim property for himself that this Court, the U.S. District Court and the Fifth Circuit have already held is not exempt. The Debtor should not be allowed a second bite at the apple where it has previously been determined that the Debtor engaged in a pattern of prepetition misconduct and is not entitled to the exemption." State Farm Motion for Reconsideration at 5.

Regardless the force or validity of these policy concerns, they are more in the way of defenses to the merits of the actions than they are to a question of standing or ownership of the causes of action.[10] The most meritorious defense will not deprive a plaintiff of the standing to bring the action.

interest in the action against the manufacturer and electrician as of the filing, contingent only upon his home being destroyed. Such an absurd result is a good indication why the court comfortably holds that there is no property interest in an as-yet-unaccrued cause of action. It is either a complete cause of action or it is *nothing.*

10. In fact they were all raised as defenses in an earlier action, discussed *infra,* involving Mr. Seidler and the bankruptcy trustee. Seidler's Motion to Dismiss Filed December 4, 1992.

Moreover, when one is speaking of fairness and windfall, just as plausible an argument can be made that, by reversing its decision, the court would be conferring an unfair windfall upon the estate. Assuming for the sake of argument that the Debtor's contentions are meritorious, *i.e.,* that but for the negligence and breaches of the Defendants the debtor would have been able to successfully claim his IRA as exempt and would not have been denied his discharge, then the estate has actually *benefitted* from the alleged misconduct of the Defendants. Because of the alleged conduct of the Defendants, the IRA, which would otherwise have been the Debtor's exempt property, became property of the estate and subject to the claims of the Debtor's creditors. The Debtor's creditors also benefitted, allegedly because of the Defendants' actions, in that the Debtor remains personally liable to them for the full amount of their claims since his discharge was denied. If the Debtor's allegations are true, then the "estate" has clearly gained from the Defendants' alleged actions, while the debtor personally, has been damaged (*i.e.* the loss of the IRA and remaining personally liable on his debts). Yet under the Defendants' theory, the appropriate party to bring the action is the trustee on behalf of the estate, even though the estate already benefitted. In other words, not only does the estate get to keep the IRA, (which otherwise would have been exempt property) but the estate gets to sue the Defendants for the wrongful conduct which resulted in the estate being *enriched* by the IRA.

The Defendants raise the specter of sophisticated debtors attempting to take advantage of the bankruptcy process, secure in the knowledge that, if they get caught, they can simply sue their lawyers. The inverse of this argument is, of course, that bankruptcy attorneys should not be insulated from malpractice actions brought by their clients when no other attorney is so insulated. Could not the same. argument be made for a tax attorney or accountant (*i.e.* unless the tax attorney or accountant is insulated from suit, sophisticated tax-payers have an incentive to obfuscate their true income, capital gain, etc. secure in the knowledge that if they get audited the tax-payer can just sue his attor-

ney or accountant)? And, after all, it is the *debtor* who has been injured by the alleged malpractice. The debtor ought to be able to recover from the lawyer who has caused the debtor injury (assuming *arguendo* that it was the *lawyer* who was at fault for the debtor's loss of discharge and loss of exemptions, and not the debtor himself).

This decision should not provide sophisticated debtors with an incentive to play fast and loose with the facts. If it is truly the debtor who is attempting to take advantage of the bankruptcy system, then the debtor's chances of recovering against his professionals are slim. On the other hand, if a debtor truly has been led astray by the professional upon whom he is relying to guide him through the bankruptcy process, then it is not fair that the debtor, personally injured by the professional, be nonetheless barred from personally recovering from that professional.

█ Policy concerns abound. Nevertheless, the court is confident that the proper road is to follow the Fifth Circuit's guidelines and declare a cause of action estate property only if, as of the commencement of the case, the Debtor could have brought the cause of action under applicable state law. *See Matter of Educators Group Trust, supra.*

### EFFECT OF THE SETTLEMENT

█ Finally, Defendant Seidler asserts that this court should reconsider its oral ruling because it is in direct conflict with this court's previous ruling in Adversary No. 92–5069, styled Marsha G. Kocurek, Trustee, Plaintiff v. Martin W. Seidler, Defendant.

On April 16, 1992 Marsha G. Kocurek, Trustee, *and* David Martin Swift, Debtor, filed their Plaintiffs' Original Complaint against Seidler. The Debtor subsequently requested that his part of the case be dismissed. The Debtor's motion was granted *without prejudice* and he was terminated as a party on August 8, 1992. On December 4, 1992 the Trustee filed the Plaintiff's First Amended Complaint. In both the original and first amended complaint the Trustee affirmatively alleged her standing pursuant to section 541(a)(1).

Seidler filed his Original Answer to the Complaint on May 15, 1992. Seidler's answer did not deny the Trustee's standing. Seidler filed a 12(b) motion to dismiss on December 4, 1992. This motion did not dispute the trustee's standing. The Defendant also filed a memorandum brief in support of his 12(b) motion on December 4, 1992. The memorandum brief did not dispute the Trustee's standing. The Defendant filed a reply brief to the Trustee's response to the 12(b) motion on January 6, 1993. The reply brief did not dispute the Trustee's standing. Also on January 6 the Defendant filed a tender of authorities. The tender of authorities were not geared toward disputing the Trustee's standing. A hearing was held on the Defendant's 12(b) motion on January 13, 1993. The Defendant did not argue at the hearing that the Trustee lacked standing to bring the claim. The Defendant filed a supplemental support brief on January 22, 1993. The supplemental support brief did not dispute the Trustee's standing. Lastly, on February 1, 1993 the Defendant filed a rebuttal brief in support of his 12(b) motion which likewise did not dispute the Trustee's standing. In short, the issue of standing or ownership of the cause of action was never litigated. Without doubt however, the defendant was on notice that the Debtor might at some point re-assert his claim which he had voluntarily dismissed *without prejudice*.

Despite the fact that the issue was never presented to the court, Seidler argues that a statement made by the court in a footnote to its introductory paragraph in the court's order denying the Defendant's 12(b) motion estops the court from now finding that the State Law Claims were not property of the estate. The footnote stated:

> All interests of the Debtor in rights of action are included as property of the estate under § 541(a)(1). *See In re Pace*, 132 B.R. 644 (Bankr.D.Alaska 1991). Since the Debtor's cause of action is property of the estate, the Trustee has standing to initiate and prosecute this action. Furthermore, the Trustee is subject to the same defenses and limitations as the Debt-.

or himself would be in asserting this cause of action.

April 16, 1993 Order Denying Defendant's Motion to Dismiss at n. 1.

Admittedly, the quoted language from footnote 1 suggests that the cause of action belonged to the estate. It ultimately has proved to be incorrect. However, the statement was *dicta*, an observation made in passing and did little more than report the stated positions of *both* parties at the time. The quoted language does not act to estop the *Debtor* from bringing the present action because the Debtor was not a party to the motion to dismiss, and more importantly, the quoted footnote was not a finding by the court essential to its judgment. The issue was never raised by the parties as being in dispute. Rather than a finding as to ownership of the causes of action, the footnote gratuitously described why the Trustee was bringing the action. Since the issue was never in dispute it was simply assumed that the Trustee had standing.[11] As stated the footnote was not a finding of the court and is not binding on the present action. It is most certainly not binding upon one who was not a party to that litigation, namely, the Debtor.

 In the alternative to his motion for reconsideration, the Defendant, Seidler, requests that the court void the compromise and settlement and order the Trustee to return the proceeds therefrom to the Defendant for want of consideration.

 The Defendant and the Trustee settled Adversary No. 92–5069 in June of 1993. This court authorized the compromise and settlement on July 1, 1993 and entered an order dismissing the Trustee's complaint, with prejudice, on July 27, 1993. It is settled law that an agreement to release a claim held in good faith, even if the claim in fact turns out to be without merit, is sufficient consideration to support a compromise and settlement. For example, the court in *Iden v. Ackerman*, 280 S.W.2d 643 (Tex.Civ.App.—Eastland, 1955) found consideration sufficient to support a compromise and settlement despite the fact that the claims that the appel-

---

**11.** It would seem that the old saw about what happens when you "assume" proves again to be quite accurate.

lees settled had no merit. The court found that until the claims were settled the appellees were bringing their claims in good faith even though they proved to be meritless. The court stated that, "[g]enerally, a mutual agreement to compromise a dispute is of itself a valuable consideration sufficient to support the contract." *Id.* at 646. The court went on to cite with approval from the CORPUS JURIS SECUNDUM, Compromise and Settlement, § 11, p. 732, as follows,

> An agreement made in good faith, without fraud, compromising a ... disputed claim to land, is supported by a sufficient consideration, even though such claim is in fact unfounded....
>
> To support a compromise it is not essential that the question in controversy be in fact doubtful in legal contemplation. It is sufficient that there be an actual controversy between the parties of which the issue fairly may be considered by both parties as doubtful and that, at the time of the compromise they in good faith so consider it.

*Id.* at 646. *Iden* is of course not the only Texas case to so hold. *See, e.g., Glover v. Glover,* 416 S.W.2d 500, 503 (Tex.Civ.App.—Eastland, 1967) ("The compromise of a doubtful right is sufficient consideration for such an agreement and, in the absence of proof of fraud, it should be enforced"); *Burgamy v. Davis,* 313 S.W.2d 365, 367 (Tex.Civ. App.—Fort Worth, 1958) ("The test is not whether the debtor was correct in his contention, in that he really had a legal or equitable defense to the claim in whole or in part, but consists in the fact that he in good faith urged or asserted a defense which he really believed was substantial"). There is no contention that the Trustee brought her suit in anything but good faith, and the settlement of the cause of action without the expense or uncertainty of trial was sufficient consideration to support the settlement.

The court is not without empathy for the Defendant, Mr. Seidler, at the prospect of still facing possible liability to the Debtor after already settling with the Trustee for a considerable sum. However, the Defendant should have been on notice when the Debtor voluntarily dismissed his cause of action without prejudice that the Debtor also held the belief that he had a right to assert the self-same claims. The Defendant could have brought a motion to determine ownership at that time, but chose not to do so.

If, on the other hand, this truly does come as a surprise and was wholly outside of the contemplation of the parties when they settled the Trustee's claims, the Defendant is certainly free to bring a motion to rescind the compromise and settlement agreement. However, if as is more likely, the parties simply guessed wrong, a motion to rescind would likely be unsuccessful. *See,* RESTATEMENT 2D OF CONTRACTS § 152 ("Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.").

### CONCLUSION

For the reasons stated herein the Defendants motions to reconsider are hereby DENIED. An order consistent with this opinion will be entered in Adversary No. 95–5177–C.

So **ORDERED**.