Lauriat, Peter M., J.
Mirlene Villarcon Pierre (“Pierre”) brought this action against Chase Home Finance, now known as J.P. Morgan Chase Bank, N.A, as successor by merger (“Chase”); WMC Mortgage, LLC (“WMC”); U.S. Bank National Association, as Trustee to MASTR Asset-Backed Securities Trust 2006-WMC4 Mortgage Pass-Through Certificates, Series 2006-WMC4 (“U.S. Bank”); Anson Street, LLC; Resurgent Capital Services; Brian J. Simone (“Simone”); Lucner Charles (“Charles”); and Carlos Melo (“Melo”), for claims arising out of the loan origination for and foreclosure of Pierre’s residence (“the property”). This action is before the Court on four motions for summary judgment and several additional motions. WMC individually, Melo individually, and U.S. Bank and Chase jointly have moved for summary judgment against Pierre. She has, in turn, filed motions for summary judgment against these four defendants. In addition, U.S. Bank and Chase have jointly filed a motion to strike Pierre’s expert affidavit and report. Melo has filed a motion to vacate the preliminary injunction order and has also filed a complaint for contempt. For the following reasons, Pierre’s motions for summary *697 judgment are denied, and the defendants’ motions for summary judgment are allowed. In light of the court’s Order, Melo’s motion to vacate the preliminary injunction is allowed. The remaining motions and Melo’s Complaint for Contempt are denied as moot.
BACKGROUND
Except where otherwise noted, the following facts appear to be undisputed.[1] In 2006, Pierre, who is an immigrant and speaks English as a second language, sought to apply for a mortgage loan with her husband. She met with a real estate broker, Lucner Charles, and signed an agreement with defendant WMC for two mortgage loans. The Mortgage Electronic Registration Systems, Inc. (“MERS”), which is not a party to this action, originated both loans “as nominee” for defendant WMC. The exact amounts of the mortgage loans, as well as the purchase price, appear to be in dispute. It is not disputed that the loan to value ratio was at least one hundred percent. The first mortgage had an adjustable rate, while the second mortgage had a fixed interest rate with a substantial balloon payment.
On the loan application documents, Pierre’s monthly income was considerably inflated, and her father-in-law, who lived in Florida at the time and had no intention of occupying the property, was listed as a co-applicant. At the closing, Pierre’s husband, who intended to reside at the property with her, signed his father’s name on the loan documents in lieu of his own name. Pierre claims that defendant Charles, WMC’s closing agent, was responsible for the misrepresentations on the loan application, of which she alleges that she knew nothing, and that he had also urged her and her husband to substitute her father-in-law as co-applicant. Pierre claims that WMC knew or should have known of Charles’ actions.[2]
The closing on the loans took place on June 5,2006. At that time, the closing attorney, Brian J. Simone, informed Pierre that her monthly payment would not be the $1,500 to $2,000 per month that Pierre had discussed with Charles, but would instead be $3,100 per month. Attorney Simone promised, however, that she would be able to refinance in six months in order to lower the monthly payments.[3] He also said that if she failed to proceed with the closing, she would lose her entire $6,100 deposit, much of which had been withdrawn from her husband’s retirement account. Pierre and her husband decided to proceed with the closing. Pierre’s husband signed his father’s name on the loan documents instead of his own name.
From the closing date through March 2008, Pierre and her husband made all mortgage payments. They attempted to refinance after her husband lost his job, but were unable to do so. On May 7, 2008, Chase, as servicer for U.S. Bank, sent Pierre an “Acceleration Warning (Notice of Intent to Foreclose).” On September 2, 2008, U.S. Bank filed a complaint to foreclose mortgage in Land Court pursuant to the Servicemembers Civil Relief Act.
On October 8, 2008, MERS assigned the mortgages to U.S. Bank, as Trustee of the MASTR Backed Securities Trust 2006-WMC4. The assignment was given a purportedly retroactive date of August 25, 2008. U.S. Bank claims that it purchased the mortgages from WMC prior to the assignment and asserts that U.S. Bank was the “lender” at the time that the “Acceleration Warning” was mailed.
On January 6, 2009, Pierre filed a voluntary petition under Chapter 7 of the U.S. Bankruptcy Code. On January 2, 2009, she filed an Intention to Surrender the home to U.S. Bank. She received a discharge in bankruptcy on April 7, 2009. On April 10, 2009, the Bankruptcy Court entered an order discharging the trustee and ordered the case closed. Pierre did not list any of her current claims against the defendants on her bankruptcy schedules.[4]
On November 10, 2009, U.S. Bank, through Chase and Harmon Law Offices, conducted a foreclosure auction of Pierre’s property. Melo, a real estate investor, was the highest bidder at the auction. On November 11, 2009, he sent Pierre a notice to quit. In June 2010, Pierre began paying Melo $1,357.10 per month in order to continue occupying the property.
Pierre filed her initial complaint in this action on July 6, 2010. This court allowed her motion to enjoin Melo from attempting to evict her, provided that she continue paying him $1,357.10 per month. In her Second Amended Complaint, she asserts eight claims against all defendants: G.L.c. 93A violations (Count I); G.L.c. 183C violations (Count II); civil conspiracy (Count III); fraud (Count IV); negligent misrepresentation (CountV); unconscionability (Count VI); breaches of the implied covenant of good faith and fair dealing (Count VII); breach of contract (against U.S. Bank, Chase and Melo only) (Count VIII), G.L.c. 140D violations (Count IX); trespass (against U.S. Bank, Chase and Melo only) (Count X); and clear title (against U.S. Bank, Chase and Melo only) (Count XI).
DISCUSSION
Only Melo has raised the question of Pierre’s standing to assert her claims given her Chapter 7 bankruptcy discharge. Nonetheless, the question must be examined. “Because standing is a question of subject-matter jurisdiction, it must be established irrespective of whether it is challenged by an opposing party.” HSBC Bank USA, N.A. v. Matt, 464 Mass. 193, 199 (2013) (citation omitted). See also Mass.R.Civ.P. 12(h)(3) (“Whenever it appears by suggestion of a party or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action”); icL, Reporter’s Notes (‘The lack of subject-matter jurisdiction may be raised at any time up to final judgment on appeal, in any way, by any party, or by the court sua sponte’j; Bevilacqua v. Rodriguez, 460 Mass. 762, 763 (2011) (“[I]t fell to the Land Court judge to raise the issue of Bevilacqua’s standing under G.L.c. 240, §1”).
*698 “Upon filing for bankruptcy protection, ‘all legal or equitable interests of the debtor in property as of the commencement of the case’ become property of the bankruptcy estate.” Augustin v. Danvers Bank, 486 F.Sup.2d 99, 103 (D.Mass. 2007), quoting 11 U.S.C. §541(a)(l). “Because all of [debtor’s] legal claims became part of the bankruptcy estate, only the trustee in bankruptcy has the authority to file a suit with respect to a pre-petition cause of action.” Augustin, 486 F.Sup. at also In re Swift, 198 B.R. 927, 930 (W.D.Tex. 1996) (“a cause of action belonging to a debtor as of the bankruptcy petition’s filing becomes property of the estate”).[5]
The initial question for the court to determine is “whether the plaintiffs alleged claims existed when [the plaintiff] filed [her] petition for bankruptcy. ” Augustin, 486 F.Sup.2d at 103. Jn re Tomaiolo, 2002 U.S.Dist. LEXIS 2038 at *5-*6 (D.Mass. 2002), quoting Butner v. United States, 440 U.S. 48, 55-57 (1979) (“The pivotal inquiry for present purposes is whether ‘as of the commencement’ of his bankruptcy case, [the plaintiffs] claim was sufficiently in existence to qualify as an interest in property”).
Here, it is clear that the majority of Pierre’s claims existed when she filed her petition. Her claims for G.L.c. 93A violations, G.L.c. 183C violations, and unconscio-nability all relate to the origination of the loans. Her claim for civil conspiracy arises out of WMC’s alleged sale of the loans to U.S. Bank shortly after the closing. Her claims for fraud, negligent misrepresentation, and G.L.c. 140D violations arise, essentially, out of the alleged misrepresentations made on the loan applications and the alleged misrepresentations or omissions made at the closing. All of this took place long before Pierre filed for bankruptcy. While Pierre’s level of legal and financial sophistication has been the subject of some dispute, she knew her loan terms, knew that she was having difficulty making payments, and knew about the allegedly unsavory acts perpetrated by the defendants with respect to her loan applications and at the closing. Thus, Pierre, or her bankruptcy counsel, should have listed all of her potential claims against the defendants as pre-petition assets.
It is true that her claims against Chase and U.S. Bank for breach of contract stem from the manner in which Chase conducted the foreclosure auction, which took place about seven months after the bankruptcy. Likewise, her claims for trespass and clear title relate to the manner in which Chase, U.S. Bank, and Melo attempted to claim ownership and occupancy of the property during or after the foreclosure auction. “Properly rights that the debtor attains post-petition can still be estate property if they are ‘sufficiently rooted in the pre-bankruptcy past’ and do not overly impair ‘the bankrupt’s ability to make an unencumbered fresh start.’ ” Tomaiolo, 2002 U.S.Dist. LEXIS at *8, quoting Segal v. Rochelle, 382 U.S. 375, 380 (1966). Here, Pierre had notice of a possible impending foreclosure either when U.S. Bank sent the Acceleration Warning, which was seven months before she filed her bankruptcy petition or, at the latest, when U.S. Bank filed a complaint for foreclosure in Land Court about four months prior to the petition. Thus, even if the claims involving the foreclosure and attempted eviction could be considered post-petition property rights, they are deeply rooted in the pre-bankruptcy estate. Compare Brooks v. Beatty, 1994 U.S.App. LEXIS 12425 (1st Cir. 1994) (unpublished) (debtor’s wrongful foreclosure claim, commenced after the foreclosure but before the bankruptcy petition was filed, should have been listed as an asset on the debtor’s schedules), and Tomaiolo, 2002 U.S.Dist. LEXIS at *8 (debtor’s claim against bankruptcy attorney for malpractice had a “substantial connection to events which occurred before Tomaiolo filed for bankruptcy” and constituted a claim belonging to the estate), with In re Doemling, 127 B.R 954, 957 (W.D.Pa. 1991) (debtor’s claim for personal injury after being struck by motor vehicle five months after filing bankruptcy petition was entirely post-petition and did not belong to bankruptcy estate).[6]
Under all of the circumstances presented in this action, the court is without subject-matter to consider Pierre’s claims.
ORDER
For the following reasons, the plaintiffs motions for summary judgment (##4 and 5 above) are DENIED, and defendants’ motions for summary judgment (##1, 2 and 3 above) are ALLOWED. The remaining motions (##6 and 7 above), and Melo’s Complaint for Contempt (#9 above) are DENIED as moot. Melo’s Motion to Vacate the Preliminary Injunction (#8 above) is ALLOWED, as the injunction was improvidently granted.

Unfortunately, there are actually five separate “joint” appendices and five separate Statements of Undisputed Facts—one for each of the defendants’ summary judgment motions, and two for the plaintiffs “motions” against U.S. Bank, Chase, and Melo. This has created a remarkably confusing summary judgment record and has further complicated an already complex case.

It appears undisputed that Charles, who is not involved in any of the pending motions, has since surrendered his broker's license in combination with certain criminal charges and other matters.

Simone has since been disbarred.

None of the parties address this in the Statements of Material Facts, but it is apparent from the record of the undisputed bankruptcy filings. See Reliance Ins. Co. v. Boston, 71 Mass.App.Ct. 550, 555 (2008) (“Properly considered public records include the records of other courts in related proceedings, of which the judge may take judicial notice in any event”).

Claims that belong to the bankruptcy estate may be excluded from the estate if they are exempt or if the bankruptcy trustee abandons the claims. Augustin, 486 F.Sup. at 104. Neither exclusion appears to apply here.

The Court realizes this leads to a somewhat unusual result. The majority of Pierre’s debt is from her mortgages. She is now unable to bring her claims in this court because her claims against her mortgagees and other involved parties are viewed as assets, which, at least in theory, could be used to pay these same creditors. The court, however, is constrained by the sparse but clear and unwavering law in this area.